PEOPLE v MITCHELL

Docket No. 311360. Submitted May 14, 2013, at Lansing. Decided June 6, 2013, at 9:05 a.m.

Bradford S. Mitchell was convicted by a jury in the Saginaw Circuit Court, Robert L. Kaczmarek, J., of second-degree murder and carrying a dangerous weapon with unlawful intent. Defendant appealed, alleging that the trial court erred by denying defendant's request for a jury instruction on voluntary manslaughter and that the evidence was insufficient to support his conviction under MCL 750.226 of carrying a weapon with unlawful intent.

The Court of Appeals *held*:

1. The trial court erred by denying defendant's request for a voluntary manslaughter jury instruction. A trial court, when a defendant is charged with murder, must give a voluntary manslaughter instruction if the instruction is supported by a rational view of the evidence. There was sufficient evidence to warrant an instruction on voluntary manslaughter because, if believed, the evidence would support a finding of provocation. The trial court abused its discretion by failing to give a voluntary manslaughter instruction. Defendant showed that it is more probable than not that a different outcome would have resulted without the error. Defendant's conviction for second-degree murder is reversed and the matter is remanded for a new trial.

2. There was insufficient evidence to support defendant's conviction of carrying a weapon with unlawful intent. The language of MCL 750.226 sanctions conduct when a person "goes armed" with a qualifying weapon with unlawful intent. The plain language of the statute requires more than movement within the place where the weapon is initially obtained, rather, "goes" denotes departing or leaving a place. The "goes armed" language requires that in order to be guilty of violating the statute, the evidence must establish that the accused departed from a location while equipped with a qualifying weapon in his or her possession and, at the time of departing, had the intent to use the weapon unlawfully against another person. There was insufficient evidence to prove that defendant violated MCL 750.226. Merely grabbing a qualifying weapon that happens to be present at the

crime scene and immediately using the weapon unlawfully does not establish that a person "goes armed."

Reversed and remanded.

CRIMINAL LAW — CARRYING A WEAPON WITH UNLAWFUL INTENT — WORDS AND PHRASES — GOES ARMED.

The phrase "goes armed" in the statute providing that any person who, with intent to use the same unlawfully against the person of another, goes armed with a qualifying weapon is guilty of a felony requires that in order to be found guilty of violating the statute the evidence must establish that the accused departed from a location while equipped with a qualifying weapon in his or her possession and, at the time of departing, had the intent to use the weapon unlawfully against another person; merely grabbing a qualifying weapon that happens to be present at the crime scene and immediately using that weapon unlawfully does not establish that a person "goes armed" (MCL 750.226).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *John A. McColgan, Jr.*, Prosecuting Attorney, and *Randy L. Price*, Assistant Prosecuting Attorney, for the people.

*Strauss & Strauss, PLLC* (by *Gary D. Strauss*), for defendant.

Before: HOEKSTRA, P.J., and TALBOT and WILDER, JJ.

HOEKSTRA, P.J. Defendant appeals as of right his convictions following a jury trial of second-degree murder, MCL 750.317, and carrying a weapon with unlawful intent, MCL 750.226. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 30 to 50 years' imprisonment for his second-degree murder conviction and to 3 to 7½ years' imprisonment for his weapon conviction. Because we conclude that the trial court erred by denying defendant's request for an instruction on voluntary manslaughter and because there was insufficient evidence to support defendant's

weapon conviction, we reverse defendant's convictions and remand for a new trial on the charge of second-degree murder.

Defendant's convictions are the outgrowth of his ongoing argument with the victim regarding five dollars that the victim owed defendant. The victim was defendant's neighbor in an apartment complex. Testimony during trial established that in the days leading up to the victim's death, defendant was harassing the victim by banging on the walls of his apartment and kicking or banging on his doors. Defendant also made threatening statements to the victim. Mark Yelle, a friend of the victim, testified that he spoke with the victim while defendant was harassing him about the money and the victim stated that he planned to "defend himself" if defendant bothered him again and indicated he would "beat" defendant. The victim's ex-wife, April Kolhoff, also testified about defendant's threats regarding the victim's debt and defendant's conduct of yelling and pounding on the doors. Both Yelle and Kolhoff testified that they were with the victim at the victim's apartment on January 14, 2011, but that their attempts to contact the victim on January 15, 2011, were unsuccessful.

On January 16, 2011, the victim's body was found face down on the kitchen floor of his apartment. An autopsy showed that the victim sustained injuries to his head, neck, and back, including a skull fracture and three or four stab wounds on the back of his neck. The medical examiner testified that some of the victim's injuries were consistent with being struck by an object such as a baseball bat. The police interviewed several people who knew the victim, including defendant. Defendant admitted having been involved in a physical altercation with the victim and testimony by the police

established that defendant had a swollen hand, a scratch on his face, and his right eye was bruised. However, defendant claimed that he struck the victim only in self-defense after the victim attacked him with a baseball bat.

Defendant was eventually arrested in connection with the victim's death. He was tried before a jury on charges of open murder and carrying a weapon with unlawful intent. The jury returned a verdict finding defendant guilty of second-degree murder and carrying a weapon with unlawful intent. This appeal ensued.

At trial, defendant maintained that the assault "was in the heat of the moment" and that the victim was the initial aggressor and, therefore, defendant requested a voluntary manslaughter instruction. The trial court denied defendant's request, finding insufficient evidence of adequate provocation to support the instruction. On appeal, defendant argues that the trial court erred by denying his request for a voluntary manslaughter instruction.[1] We agree.

---

[1] Defendant raises two additional arguments on appeal pertaining to his conviction of second-degree murder. We conclude that both issues are without merit. First, defendant asserts that the trial court erred by denying his request for an instruction on the doctrine of imperfect self-defense. However, during oral argument, defendant conceded, and we agree, that this argument has no merit because our Supreme Court recently held that the doctrine of imperfect self-defense does not exist in Michigan. *People v Reese*, 491 Mich 127, 130, 151; 815 NW2d 85 (2012). Second, defendant argues that the trial court erred by denying his request for a directed verdict on the open murder charge because there was insufficient evidence to establish either first- or second-degree murder. Having reviewed the evidence presented by the prosecution, we conclude that this argument lacks merit because viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the charged crime were proved beyond a reasonable doubt. *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003).

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). However, not all instructional error warrants reversal. Reversal is warranted only if " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26. "[T]he effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495. The verdict is undermined when the evidence clearly supports the requested lesser included instruction that was not given to the jury. *People v Cornell*, 466 Mich 335, 365; 646 NW2d 127 (2002).

When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is "supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). To prove that a defendant committed voluntary manslaughter, " 'one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions.' " *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012), quoting *Mendoza*, 468 Mich at 535. However, provocation is not an element of voluntary manslaughter; rather, it is a circumstance that negates the presence of malice. *Mendoza*, 468 Mich at 536. In *People v Tierney*, 266 Mich App 687; 703 NW2d 204 (2005), this Court held that "[t]he degree of provocation required to mitigate a killing

from murder to manslaughter 'is that which causes the defendant to act out of passion rather than reason.' " *Id.* at 714-715, quoting *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998). Further, "[i]n order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Tierney*, 266 Mich App at 715 (citation and quotation marks omitted). Whether the provocation was reasonable is a question of fact; but if "no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation." *Id.* (citation and quotation marks omitted).

We find the following facts in this case relevant to whether the trial court erred by concluding that a voluntary manslaughter instruction was not supported by the evidence. First, the testimony demonstrated that the victim owed defendant a small sum of money and that, before this incident, defendant had been threatening and harassing the victim by banging or kicking on the walls and doors of his apartment in an effort to collect the money from the victim. Further, Yelle testified that before his death, the victim indicated that he was going to "beat [defendant's] ass" if defendant continued to bother him about the money. Although defendant did not testify at trial, the jury heard evidence that defendant maintained that the victim was the initial aggressor through his interview with the police, the recording of which was played for the jury, and his signed statement. During the interview and in the signed written statement, defendant stated that he went to the victim's apartment and the victim opened the door. The victim started using profanity and then swung a baseball bat and struck defendant. Defendant maintained that he was able to take the baseball bat from the victim, but claimed that the victim still hit him in the right eye three or four times. Defendant claimed

that he used the baseball bat that he took from the victim to hit the victim on the head and shoulders and that the victim fell to the floor moaning and moving around. Defendant claimed that he left the apartment at that time.

Defendant's version of the altercation was corroborated in part by the testimony of the police that when they took defendant's statement on the same day that the victim's body was found, defendant had a swollen hand, a scratch on his face, and a bruise on his right eye. Moreover, a baseball bat, which the prosecution maintained was the murder weapon and which tested positive for the presence of the victim's blood, was discovered in the victim's apartment. Further, Yelle testified that the victim kept a baseball bat in his apartment, which supports defendant's claims that the baseball bat belonged to the victim and was at the victim's apartment before the altercation and that defendant did not bring the murder weapon with him to the scene.

We conclude that these proofs constitute sufficient evidence to warrant an instruction on voluntary manslaughter because, if believed, the evidence would support a finding of provocation.[2] Accordingly, the trial court abused its discretion by failing to give a voluntary manslaughter instruction.

We next consider whether the trial court's failure to give the requested instruction was error requiring reversal. Error that requires reversal occurs when the

---

[2] *People v Pouncey*, 437 Mich 382, 391; 471 NW2d 346 (1991), in which the Court held that mere words will not generally constitute adequate provocation, supports this conclusion. In explaining why the evidence submitted during the trial in that case was insufficient to demonstrate adequate provocation, the Court noted that "there were no punches thrown" and there was "no physical contact of any kind . . . ." *Id*. Thus, the implication is that a physical altercation could constitute adequate provocation.

error is outcome determinative, meaning the error undermined the reliability of the jury verdict. *Cornell*, 466 Mich at 365.

In this case, we need look no further than the question posed to the trial court during jury deliberations. The note sent by the jury stated: "Do we only have three options available for the murder charge: (1) Guilty first-degree; (2) Guilty second-degree; (3) Not guilty?" The trial court responded in the affirmative. The jury's inquiry strongly suggests that it wanted to consider, and likely would have convicted defendant of, a lesser charge than first- or second-degree murder if given the opportunity. In light of the jury's inquiry and the fact that the evidence supported the instruction, we conclude that defendant has shown that it is "more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495. Accordingly, defendant is entitled to reversal of his conviction for second-degree murder and a new trial.[3] *Id.* at 497.

Next, defendant argues that the evidence was insufficient to support his conviction of carrying a weapon with unlawful intent in violation of MCL 750.226.

We review de novo challenges to the sufficiency of the evidence, examining the evidence in a light most favor-

---

[3] We note that defendant may not be retried on a charge of first-degree murder because the jury implicitly acquitted him of that charge when it found him guilty of second-degree murder. *People v Garcia*, 448 Mich 442, 448-449; 531 NW2d 683 (1995); *Green v United States*, 355 US 184, 190; 78 S Ct 221; 2 L Ed 2d 199 (1957) (holding that a retrial on first-degree murder charges after the defendant's second-degree murder conviction had been reversed placed the defendant in jeopardy twice for the same offense in violation of the constitution when the defendant had been charged with both first- and second-degree murder and the jury had found the defendant guilty of second-degree murder and its verdict had been silent with regard to the first-degree murder charge).

able to the prosecution to determine whether a rational trier of fact could have found every essential element proved beyond a reasonable doubt. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010).

In this case, the prosecution charged that defendant "did, with intent to use the same unlawfully against the person of another, go armed with a knife having a blade over three inches in length and/or a dangerous or deadly weapon or instrument, to-wit: baseball bat; contrary to MCL 750.226." Relevant to the charges in this case, the evidence introduced at trial established that a knife with a blade over three inches was recovered from the waistband of the victim's clothes. However, there was no evidence that this knife was used to inflict any of the injuries sustained by the victim. Further, the prosecution did not offer any evidence that the knife belonged to defendant or that defendant brought the knife with him to the victim's apartment. Nor was there any evidence produced at trial that defendant had a different knife with him at the time of the assault. A baseball bat was also recovered from the scene. The medical examiner testified that the victim was killed when his head was struck by a blunt hard surface, such as a baseball bat. Further, Yelle testified that the victim kept a baseball bat in his apartment. Defendant also asserted, during his interview by the police, that the baseball bat belonged to the victim, who allegedly opened the door and immediately swung the baseball bat at defendant.

During closing argument, the prosecution argued that defendant did not have to "bring a weapon" with him to be guilty of carrying a weapon with unlawful intent. Rather, the prosecution maintained that defendant could be found guilty of carrying a weapon with unlawful intent if the evidence established that he

picked up the baseball bat at the victim's apartment and made the decision to use it.

On appeal, defendant maintains that there was insufficient evidence to support his conviction because there was no evidence to demonstrate that a knife over three inches in length was used and the evidence supports only a finding of self-defense in regard to the use of the baseball bat. We agree that there was insufficient evidence to support his conviction, but for reasons not argued by defendant.

Defendant's sufficiency challenge requires interpretation of the "goes armed" requirement found in the carrying a weapon with unlawful intent statute, MCL 750.226. In particular, we must determine whether the statutory requirement that a person "goes armed" can be satisfied if a person arms himself or herself at the scene of an incident or whether a person must leave a place with a weapon and proceed toward another location.

Resolution of this issue requires statutory interpretation. We review de novo questions of statutory interpretation. *People v Peltola*, 489 Mich 174, 178; 803 NW2d 140 (2011). The goal of statutory interpretation is to give effect to the intent of the Legislature. *Id*. at 181. "The most reliable indicator of the Legislature's intent is the words in the statute." *Id*. The words of a statute are given their plain and ordinary meaning, and judicial construction of unambiguous statutory language is not permitted. *Id*. A dictionary may be consulted to determine the meaning of a word that has not acquired a unique meaning at law. *People v Wood*, 276 Mich App 669, 671; 741 NW2d 574 (2007).

MCL 750.226 provides:

> Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or

other firearm or dagger, dirk, razor, stiletto, or knife having a blade over 3 inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years or by a fine of not more than 2,500 dollars.

We begin our analysis by noting that despite the fact that the word "carrying" is not used in the statutory text, violation of MCL 750.226 is typically referred to as the crime of "carrying a weapon with unlawful intent." See, e.g., *People v Veling*, 443 Mich 23, 29; 504 NW2d 456 (1993); *People v Short*, 289 Mich App 538, 539; 797 NW2d 665 (2010); *People v Parker*, 288 Mich App 500, 501; 795 NW2d 596 (2010). The use of the term "carrying" to describe the conduct proscribed by MCL 750.226 likely stems from the statute's catch line that describes the offense as "CARRYING FIREARM OR DANGEROUS WEAPON WITH UNLAWFUL INTENT." However, the catch line of a statute is not part of the statute itself, and should not be used to construe the section more broadly or narrowly than the text of the section would indicate. MCL 8.4b; *People v Nick*, 374 Mich 664, 665; 133 NW2d 201 (1965). Rather, the catch line is "inserted for purposes of convenience to persons using publications of the statutes." MCL 8.4b.

Further, we observe that the use of the term "carrying" has carried over into the caselaw interpreting MCL 750.226. The elements of MCL 750.226 are commonly referred to as: "(1) *carrying* a firearm or dangerous weapon, (2) with the intent to unlawfully use the weapon against another person." See *People v Harrington*, 194 Mich App 424, 428; 487 NW2d 479 (1992) (emphasis added). However, unlike the reliance on the word "carrying" to either describe or identify the elements of MCL 750.226, the language of the statute itself sanctions conduct when a person "goes armed" with a

qualifying weapon with unlawful intent. Because the language of the statute controls our interpretation of the Legislature's intent, we conclude that the word "carrying" does not have any significance in either identifying the elements of the offense or understanding what actions are sufficient to convict under MCL 750.226. *Peltola*, 489 Mich at 181; MCL 8.4b. Rather the operative language is "goes armed."

The word "go" is relevantly defined as "to leave a place; depart." *Random House Webster's College Dictionary* (1992). The word "arm" is relevantly defined as "to equip with weapons." *Id.* Thus, we conclude that the plain language of the statute requires more than movement within the place where the weapon is initially obtained; rather, "goes" denotes departing or leaving a place. Hence, when the "goes armed" language of the statute is properly understood, it requires that in order to be guilty of violating MCL 750.226, the evidence must establish that the accused departed from a location while equipped with a qualifying weapon in his or her possession and, at the time of departing, had the intent to use the weapon unlawfully against another person.[4]

---

[4] While not presented as an issue on appeal, we note that the criminal jury instruction, which the trial court relied on to instruct the jury, similarly fails to use the statutory language to describe the elements of MCL 750.226. CJI2d 11.17 begins by stating that "[t]he defendant is charged with the crime of being armed with a dangerous weapon with unlawful intent." Thus, the criminal jury instruction uses the phrase "being armed" instead of the statutory phrase "goes armed." The term "being" is defined as "the fact of existing; existence." *Random House Webster's College Dictionary* (1992). Thus, "being armed" connotes a very different type of behavior than when a person "goes armed" because "being armed" requires only the existence of the state of having a weapon, while in order to be a person who "goes armed" one must leave a place or depart with a weapon. Because the statute clearly prohibits only the conduct of a person who "goes armed," use of the phrase "being armed" impermissibly expands the scope of MCL 750.226.

Applying this interpretation of MCL 750.226 to the facts of this case, we conclude that the prosecution's theory of the case and the evidence it relied on to support that theory were insufficient to prove defendant guilty of violating MCL 750.226. The evidence indicates that both the knife and the baseball bat were discovered in the victim's apartment, and testimony established that the victim routinely kept a baseball bat at his apartment. No evidence was submitted to support the conclusion that defendant brought the baseball bat, a knife, or any other qualifying weapon, with him to the victim's apartment. Further, contrary to the prosecution's position, merely grabbing a qualifying weapon that happens to be present at the crime scene and immediately using that weapon unlawfully does not establish that a person "goes armed." Moreover, we note that if the prosecution's interpretation of the statute were accepted, every crime where a qualifying weapon is used would also constitute a violation of MCL 750.226.

Therefore, we conclude that there was insufficient evidence to prove defendant was guilty of a violation of MCL 750.226. "Acquittal, not retrial, is the proper remedy, as dictated by double jeopardy principles." *Parker*, 288 Mich App at 509.[5]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

TALBOT and WILDER, JJ., concurred with HOEKSTRA, P.J.

---

[5] In light of our conclusion that reversal is required, we decline to address defendant's arguments regarding the alleged scoring errors.