**UNITED STATES of America, Plaintiff**

**v.**

**Ronnell Leeshawn MARTIN, Defendant.**

**Case Number 15-20112**

United States District Court, E.D. Michigan, Southern Division.

Signed November 2, 2015

---

Andrew Yahkind, U.S. Department of Justice, Detroit, MI, for Plaintiff.

Federal Defender, Andrew N. Wise, Federal Defender Office, Detroit, MI, for Defendant.

## ORDER SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT

DAVID M. LAWSON, United States District Judge

Defendant Ronnell Leeshawn Martin pleaded guilty to being a felon in possession of a firearm, contrary to 18 U.S.C. § 922(g)(1). A presentence investigation was conducted and a report was prepared as required by Fed. R Crim P. 32(d). The report calculates the base offense level at 20, citing only "U.S.S.G. § 2K2.1." The base offense level of 20 is prescribed by USSG § 2K2.1(a)(4), but there are multiple bases for application of that section. The one that is the closest fit—and the subsection that the probation officer likely relied on—is subsection (A), which applies "if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence . . . ." The defendant has objected to the application of this section, and contends the base offense level should be 14, per USSG § 2K2.1(a)(6).

The PSR also included a four-level enhancement under USSG § 2K2.1(b)(6)(B), on the basis that the firearm was possessed during the commission of another felony. The felony would have been possession of an imitation substance with intent to distribute it, which is a violation of Michigan law. The defendant has objected to the application of that enhancement.

### A.

According to the Sentencing Guideline Manual Commentary, the phrase "crime of violence" as used in USSG § 2K2.1(a)(4) "has the meaning given . . . in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." USSG § 2K2.1 comment. (n.1). That reference is to the career offender provisions of the Guideline Manual. The definition section in that subchapter states:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a).

In 2013, well before the instant offense was committed, the defendant was convicted of carrying a weapon with unlawful

intent, in violation of Michigan law. *See* Mich. Comp. Laws § 750.226. Determining whether that crime is a "crime of violence" calls for the application of a "categorical approach." *United States v. Ozier*, 796 F.3d 597, 599 (6th Cir.2015) (citing *United States v. Prater*, 766 F.3d 501, 509 (6th Cir.2014)). That, in turn requires examination of the law "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008); *see also Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

■ The elements of carrying a weapon with unlawful intent under state law are "(1) carrying a firearm or dangerous weapon, (2) with the intent to unlawfully use the weapon against another person." *People v. Mitchell*, 301 Mich.App. 282, 292, 835 N.W.2d 615, 621 (2013) (quoting *People v. Harrington*, 194 Mich.App. 424, 428, 487 N.W.2d 479, 483 (1992)) (emphasis omitted). The crime does not require proof of "the use, attempted use, or threatened use of physical force against the person of another," and it is not "burglary of a dwelling, arson, or extortion, [and does not] involve[ ] use of explosives." Therefore, the defendant's conviction would trigger the enhanced base offense level under USSG § 2K2.1(a)(4) only if the prior offense "otherwise involves conduct that presents a serious potential risk of physical injury to another."

The "otherwise" clause in section 4B1.2(a)(2) is identical to the so-called residual clause found in the Armed Career Criminal Act. *See* 18 U.S.C. § 924(e)(2)(B); *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 2556, 192 L.Ed.2d 569 (2015). In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act was unconstitutionally vague because it "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2557. The Court concluded that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Ibid.*

Although the Armed Career Criminal Act is a penal statute, and the Sentencing Guideline provisions are only advisory, *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the vagueness of the residual clause in USSG § 2K2.1(a)(4) still infects its application in the Sentencing Guidelines, since it also "invites arbitrary enforcement by judges." *See United States v. Darden*, 605 Fed. Appx. 545, 546 (6th Cir.2015) (observing that "after *Johnson*, the Supreme Court vacated the sentences of offenders who were sentenced under the Guidelines' residual clause" (citations omitted)).

■ Applying the residual clause in USSG § 4B1.2(a) to declare the defendant's prior conviction a "crime of violence" for the purpose of enhancing his base offense level under USSG § 2K2.1(a)(4) violates the defendant's rights under the Due Process Clause. Application of that clause is unconstitutional. The defendant's objection, therefore, will be sustained. His base offense level is determined to be 14 under USSG § 2K2.1(a)(6).

### B.

According to the PSR, when the defendant was arrested on January 11, 2015, he was carrying a plastic bag that held about 30 grams of white powder. The field test was positive for cocaine, but a more thorough laboratory analysis performed later indicated that the substance in fact was lidocaine, which is not a controlled substance. The defendant also possessed at the time a small quantity of marijuana and a few Alprasolam pills for which he did not have a prescription.

Based on those facts, which are uncontested, the PSR included an four-level enhancement under USSG § 2K2.1(b)(6)(B), which applied " [i]f the defendant ... [u]sed or possessed any firearm or ammunition in connection with another felony offense ...." The Guideline Manual explains:

Subsection[ ] (b)(6)(B) ... appl[ies] ... in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.

USSG § 2K2.1 comment. (n.13). The probation officer believed that the facts supported a conclusion that the defendant possessed the firearm while committing the offense of possessing an imitation substance with intent to distribute it, contrary to Michigan Compiled Laws § 333.7341(3), which is a felony under state law.

The defendant objects to the four-level enhancement, arguing that (a) the PSR does not document how the firearm was "connected" to the drug trafficking crime, (b) the powder did not meet the definition of "imitation substance" under Michigan Compiled Laws § 333.7341(1)(b), and (c) there is no indication that the defendant intended to distribute the substance.

■ When he was arrested, the defendant possessed both the bag of powder and the firearm on his person. They were "in close proximity" to each other. Those facts are not contested. The defendant had ready access to the firearm, which he could have used to protect the fake substance, or to "embolden himself while participating in felonious conduct." *United States v. Burns*, 498 F.3d 578, 580 (6th Cir.2007) (quoting *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir.2006)). The government has established by a preponderance of evidence the required nexus between the firearm and the fake substance.

The Michigan statute contains a detailed definition of "imitation substance." It generally states that an imitation substance is not a controlled substance, but "by dosage unit appearance including color, shape, size, or markings, and/or by representations made, [it] would lead a reasonable person to believe that the substance is a controlled substance." Mich. Comp. Laws § 333.7341(1)(b). The prescribed factors to consider include "[w]hether the substance is packaged in a manner normally used for illicit controlled substances"; whether the "person in control of the substance has any prior convictions under state or federal law related to controlled substances or fraud"; and "[t]he proximity of the substance to controlled substances." *Id.* at .7341(1)(b)(iii)-(v). Here, the powder field tested positively as cocaine. That likely was due to the fact that the powder contained lidocaine, which is commonly known as an anesthetic. As the government noted in its sentencing memorandum, the anesthetic effect of licodaine produces a numbing sensation similar to actual cocaine. Lidocaine also is used to cut or extend the quantity of powder cocaine when larger quantities are broken down for distribution. The white powder was packaged in a plastic baggie, which is in the style used by drug dealers to transport and distribute powder cocaine. The substance is indistinguishable from actual powder cocaine. And it was found in close proximity to the marijuana and Alprasolam pills, which are actual controlled substances. Moreover, the defendant has a prior conviction for possessing methamphetamine and Ecstacy pills in 2013. The government has established by a preponderance of evidence that the powder substance fits the definition of "imitation substance" under Michigan law.

Finally, if the defendant knew that the substance was fake, it is highly unlikely that he would have possessed it for personal use. Rather, his intent no doubt would be to distribute it by passing it off as cocaine. And if he believed the substance

was cocaine, 30 grams is a very large quantity to possess for personal use. An intent to distribute may be drawn "from circumstantial evidence of the possession of large quantities of drugs." *United States v. Young*, 243 Fed.Appx. 105, 106 (6th Cir.2007) (citing *United States v. Faymore*, 736 F.2d 328, 333 (6th Cir.1984)). The government has proved by a preponderance of evidence that the defendant intended to distribute the fake powder substance that he possessed.

The defendant's objection to the four-level enhancement under USSG § 2K2.1(b)(6)(B) will be overruled.

\* \* \* \* \* \* \* \* \* \* \* \*

The enhanced base offense level predicated on the defendant's prior conviction for a "crime of violence" cannot stand because the residual clause within the definition of that term is unconstitutionally vague. The government has established by a preponderance of evidence that the defendant possessed the firearm in connection with a felony drug offense.

Accordingly, it is **ORDERED** that the defendant's objections to the presentence report are **SUSTAINED IN PART AND OVERRULED IN PART.**

It is further **ORDERED** that the defendant's base offense level is determined to be 14 under USSG § 2K2.1(a)(6); that level is increased by four levels under USSG § 2K2.1(b)(6)(B), he is entitled to a three-level reduction for acceptance of responsibility under USSG § 3E1.1(a)(&(b), and his net offense level is 15.

It is further **ORDERED** that the sentencing hearing is continued to **November 23, 2015 at 3:00 p.m.**