# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CARLOS WASHINGTON,

Defendant-Appellant.

UNPUBLISHED
December 27, 2018

No. 339792
Wayne Circuit Court
LC No. 17-001866-01-FC

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant, Carlos Washington, appeals as of right his jury trial convictions for assault with intent to do great bodily harm less than murder, MCL 750.84, carrying a dangerous weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of a felony, MCL 750.227b.[1] The trial court sentenced defendant to 4 to 10 years for assault with intent to do great bodily harm less than murder, three to five years for carrying a dangerous weapon with unlawful intent, and two years for felony-firearm.

This case arises out of a January 29, 2017, incident where defendant shot Landa Henderson seven times. Henderson claimed that defendant shot him for no apparent reason, while defendant contended that he accidentally shot Henderson in self-defense while attempting to protect himself from Henderson's dog. Defendant contends on appeal that there was insufficient evidence to convict him of the charge of carrying a dangerous weapon with unlawful intent, and that the trial court erred in scoring 25 points for offense variable (OV) 13, MCL 777.43, for the assault charge. We agree with the latter argument, but not the former; thus, we affirm defendant's convictions but vacate defendant's sentences and remand to the trial court for resentencing.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence admitted at trial did not support a finding that he carried a firearm with the intent to unlawfully use the weapon against a person. At most, it

---

[1] The jury acquitted defendant of the charge of assault with intent to murder, MCL 750.83.

-1-

showed that any intent arose after the men were engaged in an argument. This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo, while viewing the evidence in a light most favorable to the prosecution "to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014), citing *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). All conflicts in the evidence are resolved in favor of the prosecution, and all circumstantial evidence and resulting reasonable inferences drawn therefrom can establish satisfactory proof of the crime. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). This Court will not interfere with the jury's determinations regarding "the weight of the evidence or the credibility of witnesses." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

The two elements of carrying a dangerous weapon with unlawful intent, MCL 750.226, are: (1) going armed with a firearm or dangerous weapon, (2) with the intent to unlawfully use the weapon against another person. See *People v Mitchell*, 301 Mich App 282, 292-293; 835 NW2d 615 (2013). To be convicted of this crime, "the evidence must establish that the accused departed from a location while equipped with a qualifying weapon in his or her possession and, at the time of departing, had the intent to use the weapon unlawfully against another person." *Mitchell*, 301 Mich App at 293.

Contrary to defendant's assertion, the admitted evidence was sufficient for the jury to convict defendant of the charged offense. Henderson testified that at 5:05 p.m. on the day of the shooting, he had stepped outside of his house and onto the front porch in order to make a phone call. His German Shepherd dog, Lucky, was sitting outside with him on the porch. Henderson lived two or three houses down and on the other side of the street from defendant. According to Henderson, after about five or ten minutes of his being on the phone on his front porch, he saw defendant, defendant's brother, and defendant's girlfriend, Calphilesea Winters, step outside of defendant's house. Winters was yelling profanities at defendant while defendant was telling her to "shut up." As soon as the three left defendant's house, they began to approach Henderson. Henderson told them to go back across the street because Henderson had his dog outside, but defendant and the others kept coming closer. Henderson did not know why the three of them were coming toward him. Henderson told Lucky to stay and walked into the street toward defendant and the other two. Henderson told Winters that he only wanted to talk to defendant, and not to Winters. Henderson then told defendant to take Winters back across the street because Winters "always started things." At this point, Henderson saw defendant pull out a gun and tell Henderson "get back, ni----, get off me. You can't cross my side. Get off here." Defendant then shot Henderson twice in the shoulder and Henderson fell to the ground. Lucky, who had remained on the porch prior to this point, came toward Henderson after the gun went off. Henderson heard defendant shoot four times at Lucky before Lucky ran off in a different direction. Henderson testified that he proclaimed, "you shot my dog, you shot my dog," while he was lying on the ground. Defendant then stood over Henderson and shot him five more times in the back. According to Henderson, defendant was about 4 feet away from him at the time of the shooting. The police detective who investigated the scene of the shooting found, among other things, a box of ammunition on defendant's fireplace mantle, a gun on the stair landing inside defendant's house, and a pool of blood in the street in the proximity of a fired projectile and five spent casings. He opined that based on his experience investigating similar incidents, the gun had been fired at a downward angle into the victim.

Defendant and Winters testified to a different version of the events. Winters learned about something that enraged her and she stepped outside to confront Henderson while defendant, whom Winters said was also in a rage, tried to stop her. The three, Winters, Henderson, and defendant, ended up arguing and Henderson allegedly told his dog to "get 'em," at which point Winters began running into defendant's house and heard shots fired. Defendant testified that the dog ran down Henderson's steps and started heading over to defendant's side of the street, so he pulled his handgun from the holster on his left-hand side and shot at the dog. The gun jammed, he straightened it out, and he tried to hold the dog at bay, at which point he fired more shots at the dog as Henderson lunged in front of his dog, getting shot in the process. According to defendant, Henderson then produced a knife and slashed at defendant's chest, requiring defendant to shoot at Henderson in self-defense. Defendant argues that his actions were in self-defense, and thus do not qualify as an unlawful use of force. See MCL 780.972(1).

Although the jury was presented with differing versions of the event, this Court is to resolve all conflicts in the evidence in favor of the prosecution on appeal. See *Solloway*, 316 Mich App at 180-181 ("All conflicts in the evidence must be resolved in favor of the prosecution . . . ."). A jury could easily conclude from the evidence that defendant, enraged by something involving Henderson, left his house armed with a gun that he had loaded with bullets from the box of bullets on his fireplace mantel and proceeded out of his house with Winters in order to intentionally approach, confront, and unlawfully shoot Henderson. This Court may not interfere with the jury's weighing of the evidence presented. See *Stevens*, 306 Mich App at 628 ("This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses."). Therefore, sufficient evidence existed for the jury to convict defendant of carrying a dangerous weapon with unlawful intent.

## II. RESENTENCING

Defendant next contends, and the prosecution agrees, that the trial court erred when scoring OV 13. Both parties agree that defendant should have received zero points under MCL 777.43(1)(g) instead of 25 points under MCL 777.43(1)(c). The parties submit that this Court should vacate defendant's sentence and remand for resentencing because this scoring error affected defendant's minimum sentence guidelines range. We agree.

This Court reviews de novo any issue of statutory interpretation, including any issues involving the interpretation and application of the legislative sentencing guidelines. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016). The trial court's factual determinations are "reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The application of the facts to the law, or whether the facts are adequate to satisfy the statutory scoring conditions, is a question of statutory interpretation reviewed de novo. *Id*.

MCL 769.34(10) provides that "[i]f a [defendant's] minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." If a defendant shows that one of these exceptions exists which alters his minimum sentencing guidelines range, that defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 88-92; 711 NW2d 44 (2006). In

this case, defendant's minimum sentencing guidelines range was 29 to 57 months. Defendant's minimum sentence of 48 months is within the minimum sentencing guidelines range, and, therefore, MCL 769.34(10) applies.

OV 13, MCL 777.43, applies to continuing patterns of criminal behavior. The trial court assessed OV 13 at 25 points under subsection (1)(c), which requires a finding that "[t]he offense was part of a pattern of felonious criminal activity involving three or more crimes against a person." MCL 777.43(2)(a) provides that "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction."

Defendant's Presentence Investigation Report does not list any crimes at all within a five-year period of the sentencing offense, other than those in the present case. Assault with intent to cause great bodily harm less than murder is a crime against a person, MCL 777.16d, but carrying a dangerous weapon with unlawful intent is a public safety violation, MCL 777.16m, and felony firearm is not a crime against a person or property, and it cannot be used in scoring OV 13, see *People v Bonilla-Machado*, 489 Mich 412, 415-416; 803 NW2d 217 (2011). Thus, the trial court should have assessed OV 13 at zero under MCL 777.43(1)(g). Both defendant and the prosecution agree that rectifying this error would reduce defendant's minimum sentencing guidelines range from 29 to 57 months to 19 to 38 months. Therefore, under MCL 769.34(10) and *Francisco*, 474 Mich at 92, defendant is entitled to resentencing.

Defendant's convictions are affirmed, but his sentences are vacated. We remand this matter for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering