*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
March 28, 2024

v

DAVID ALAN STEVENS,

      Defendant-Appellant.

No. 365472
Lenawee Circuit Court
LC No. 2017-018596-FC

Before: CAVANAGH, P.J., and JANSEN and MALDONADO, JJ.

PER CURIAM.

Following a remand from this Court, defendant was resentenced as a second-offense habitual offender, MCL 769.10, to serve 14 to 75 years' imprisonment for his conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b. Defendant appeals his sentence by right. Defendant's guidelines range was properly calculated, but because he was improperly sentenced as a second-offense habitual offender, we vacate defendant's sentence and remand for resentencing.

## I. BACKGROUND

This is the second time this case has been before us; a prior panel affirmed defendant's CSC-I conviction but vacated two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d, as well as defendant's sentence. See *People v Stevens*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 344795). The circumstances giving rise to defendant's convictions were aptly laid out by the prior panel:

> In 2017, defendant's former stepchildren, MW and SW, disclosed numerous incidents of sexual abuse by defendant. SW testified about several such incidents, including having performed fellatio on defendant in November or December 2012, when she was 13 years old. The 2012 incident formed the basis of the CSC-I charge against defendant. The CSC-III charges arose from another incident that occurred in January or February 2017. With respect to that incident, both MW and SW testified to sexual activities with defendant, which included defendant twice

-1-

performing fellatio on MW. Neither MW nor SW reported what had happened with defendant until MW disclosed it to his aunt in April 2017. [*Id*. at 1.]

This Court vacated defendant's CSC-III convictions due to ineffective assistance arising from the failure to object to instructional errors. *Id*. at 5-6. The Court also vacated defendant's sentence due to the impact that vacating defendant's CSC-III had on PRV 7 and due to a separate error with the scoring of OV 9. *Id*. at 9-11. However, the Court rejected challenges to OVs 4, 8, and 10, reasoning that the evidence supported the respective assessments of 10, 15, and 15 points. *Id*. The case was remanded for resentencing. *Id*. at 11.

## II. STANDARDS OF REVIEW

The trial court's factual findings are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (quotation marks and citation omitted).

Questions of statutory interpretation are reviewed de novo. *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003).

## III. GUIDELINES

Defendant argues that he is entitled to resentencing because his guidelines range was not properly calculated. We disagree.

Criminal defendants are entitled to a sentence that is based on accurate information and accurate scoring of the sentencing guidelines. *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). Sentencing courts must determine the applicable minimum sentence range under the sentencing guidelines and take such calculations into account when imposing a sentence; however, the guidelines are advisory only and not mandatory. *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). A defendant is entitled to resentencing if there is a scoring error that alters the defendant's recommended minimum sentence range under the guidelines. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). A defendant is not entitled to resentencing if a scoring error does not alter the defendant's guidelines range. *Id*. at 89 n 8.

### A. PRV 2

We decline to review the court's decision to assess 5 points for PRV 7 because the requested reduction would not impact defendant's guidelines range. As noted, a guidelines reduction only entitles a defendant to resentencing if it reduces the guidelines range. Defendant was assessed 5 points for PRV 2 and 2 points for PRV 5, resulting in a total PRV score of 7. This resulted in defendant being placed in PRV level B. See MCL 777.62. Had 0 points been assessed for PRV 2, as defendant asserts should have, this would result in a total PRV score of 2, and a PRV

score of 2 would likewise place defendant in PRV level B. Because defendant was placed in the correct PRV level regardless of how PRV 2 was assessed, there is no need to address this argument.

## B. OVS 4 AND 8

The doctrine of the law of the case bars us from reviewing the court's assessment of 10 and 15 points for OVs 4 and 8, respectively. "The law-of-the-case doctrine provides that an appellate court's decision regarding a particular issue is binding on courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." *People v Owens*, 338 Mich App 101, 120; 979 NW2d 345 (2021) (quotation marks and citation omitted). In the prior appeal this Court provided detailed analyses of OVs 4 and 8 before concluding that the evidence supported the court's scoring of these variables. *Stevens*, unpub op at 9-10. Pursuant to the doctrine of the law of the case, we are bound by the prior panel's decision with respect to those issues. *Owens*, 338 Mich App at 120.

## C. OV 13

Defendant argues that the trial court erred by assessing 25 points for OV 13 and that 0 points should have been assessed instead. We disagree.

OV 13 "is continuing pattern of criminal behavior." MCL 777.43(1). It is appropriate to assess 25 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). The sentencing offense and the two vacated counts of CSC-III served as the basis for the court's assessment of 25 points for this variable.

Defendant argues that the evidence did not support the trial court's finding that the two counts of CSC-III occurred within five years of the CSC-I conviction for which defendant was sentenced. According to defendant, the two CSC-IIIs were committed in 2017 while "the sentencing offense occurred before Christmas when [SW] was in the seventh grade, which would place it sometime in December of 2011." However, the testimony at trial established that the facts giving rise to the CSC-I conviction occurred late in 2012, not 2011. SW testified that it happened when she was in 7th grade, after her November 5th birthday but before Christmas. Having established that it occurred in November or December of 7th grade, SW and the prosecutor worked backward to ascertain the year the crime was committed:

> *Q*. And when did you graduate high school?
>
> *A*. I graduated last year.
>
> *Q*. Last year. And so were you 18 when you graduated?
>
> *A*. Yes.
>
> *Q*. All right. So you were 18 in 2017?

*A.* Yes.

* * *

*Q.* Okay. So if we would have gone back, then so in 2016 you would have been—you would have turned 17. In 2015, is it true you would have turned 16 that November?

*A.* [Yes.]

* * *

*Q.* Is it—is it—do you remember turning 15 your freshman year?

*A.* I do.

*Q.* Okay. So in—you went from 8th grade, that would have been at the middle school in Onsted, do you remember turning 14 in 2013, your 8th grade year?

*A.* [Yes.]

* * *

*Q.* Okay. So in 2012, on November 5th of 2012, you would have turned 13?

*A.* Yes.

*Q.* Is that true? So it was—it was after your birthday that year—

*A.* Yes.

*Q.* —in 7th grade, but before Christmas; is that right?

*A.* Correct.

*Q.* So between November of 2012 and the end of—November—or excuse me, December 25th of 2012?

*A.* Yes.

So, while she took a roundabout way to get there, SW did testify that the offense occurred between November 5 and December 25, 2012. Defendant essentially argues that SW and the prosecutor miscounted when they were working their way back with SW from spring 2017 graduation to seventh grade. There is some validity to this argument. If SW was 18 when she graduated in the spring of 2017, that means that she would have turned 18 in November 2016. However, as noted above, the prosecutor suggested to SW that, if she was 18 when she graduated in 2017, she must have turned 17 in November 2016, and SW agreed. Clearly, they were confused, because if SW was 18 in the Spring of 2017 then her most recent birthday—November 2016—

was when SW turned 18 years old. The confusing nature of this discussion undoubtedly demonstrates that the waters were muddied regarding SW's age in relation to when the offense occurred. However, what is not muddy is that SW did eventually testify that the offense occurred near the end of 2012, not 2011. The court was free to find this statement credible, and this was sufficient to establish by a preponderance of the evidence that the offense occurred in 2012. Both SW and MW testified that the conduct giving rise to the CSC-III convictions occurred in January or February of 2017. Thus, the evidence was sufficient to support the court's finding that all three offenses happened within five years of each other.

Notably, there are multiple routes we can take to affirm the assessment of 25 points for OV 13. Simply put, SW testified with confidence that the offense happened when she was in the seventh grade, and defendant is correct that SW was in the seventh grade at the end of 2011, not 2012.[1] It cannot be true that the offense occurred in November or December 2012 *and* that the offense occurred when SW was in the seventh grade. Assuming that SW was correct when she testified that it happened between her birthday and Christmas in seventh grade, then the earliest the offense could have occurred was November 6, 2011. Accordingly, the assessment of 25 points for OV 13 must include two additional felonious crimes against a person committed prior to November 6, 2016. See MCL 777.43(1)(c). However, as noted, SW and MW each testified that the facts giving rise to the two CSC-III convictions occurred in January or February of 2017.

However, SW and MW each offered testimony suggesting that there were other instances of felonious sexual misconduct that occurred prior to 2017. The 2017 incident involved defendant covering MW's face, defendant performing fellatio on MW, and defendant making SW perform fellatio on MW. MW was asked to explain how he knew whether defendant or SW was performing fellatio at any given time even though his face was covered:

> *A.* Because since we had this before, I could tell by [SW] uses her teeth and [defendant] doesn't.
>
> *Q.* Okay. How often had this happened in the past?
>
> *A.* At least five times.
>
> * * *
>
> *Q.* When was the last time you think that something like this had happened between you guys?
>
> *A.* I can't recall.

_____

[1] SW graduated high school in the spring of 2017, and SW testified that she neither skipped nor repeated any grades. So, it follows that she was in twelfth grade in November/December 2016, eleventh grade in 2015, tenth grade in 2014, ninth grade in 2013, eighth grade in 2012, and seventh grade in 2011. Therefore, if the offense occurred in November or December of seventh grade, then it happened in November or December of 2011.

*Q.* Like months? Years? Weeks? What?

*A.* Months.

Given that MW testified to having been sexually abused by defendant on at least five occasions, the first of which being months before February 2017, it is completely reasonable to infer that this happened multiple times before November 6, 2016.

SW also testified to having been abused by defendant numerous times. SW testified that she moved to Onsted in the sixth grade and that there was "touching" and "blow jobs" at the Onsted house. Moreover, during redirect examination, SW testified that the sexual abuse was an ongoing occurrence for a significant period of time:

*Q.* Based on your testimony, you were a little girl when [defendant] started making you suck his penis, weren't you?

*A.* Yes.

*Q.* Do you really have a lot of memories before [defendant] was doing that to you?

*A.* I do not, no. Nothing that I can remember.

*Q.* So pretty much your entire life that you remember you've been having to suck [defendant's] penis when he wanted you to; is that true?

*A.* Yes.

*Q.* So did it—is there—in a way did it end up becoming a little bit normal to you?

*A.* Yes

Given this testimony, there was ample evidence to support a finding that defendant's CSC-I offense was part of a pattern of three or more offenses during a five-year period.

Therefore, the trial court did not err by assessing 25 points for OV 13.

IV. PRIOR CONVICTION

The record does not provide a sufficient basis upon which to conclude that the conduct giving rise to defendant's Ohio conviction would have been a felony in Michigan, and therefore, the trial court erred by sentencing defendant as a habitual offender.

It is permissible for a court to sentence a criminal defendant as a habitual offender on the basis of a prior conviction from another jurisdiction if the conviction for that offense "would have been for a felony or attempt to commit a felony in this state if obtained in this state . . . ." MCL 769.10(1). This statute "requires that the offense be a felony in Michigan under Michigan law, irrespective of whether the offense was or was not a felony in the state or country where originally

perpetrated." *People v Quintanilla*, 225 Mich App 477, 479; 571 NW2d 228 (1997).  Accordingly, "the facts of the out-of-state crime, rather than the words or title of the out-of-state statute under which the conviction arose, are determinative." *Id.*

In 2006, defendant was convicted by an Ohio court of nonsupport of dependents.[2]  In Ohio, this offense is governed by Ohio Rev Code Ann 2919.21, which provides in relevant part:

> (A) No person shall abandon, or fail to provide adequate support to:
>
> * * *
>
> (2) The person's child who is under age eighteen, or the person's child with a mental or physical disability who is under age twenty-one;
>
> * * *
>
> (B)(1) No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person:
>
> (a) Is legally obligated to support; or
>
> (b) Was legally obligated to support, and an amount for support:
>
> (*i*) Was due and owing prior to the date the person's duty to pay current support terminated; and
>
> (*ii*) Remains unpaid.
>
> (G)(1) Except as otherwise provided in this division, whoever violates division (A) or (B) of this section is guilty of nonsupport of dependents . . . .[3]
>
> * * *

The analogous offense in Michigan is defined in MCL 750.165(1), which provides:

> If the court orders an individual to pay support for the individual's former or current spouse, or for a child of the individual, and the individual does not pay the support in the amount or at the time stated in the order, the individual is guilty

---

[2] Defendant also had a prior felony conviction for possession of criminal tools in Ohio, but the trial court concluded that this offense would not have been a felony in Michigan.

[3] Division (G)(1) proceeds to lay out the circumstances under which nonsupport of dependents is a misdemeanor or a felony, but Ohio's classification is immaterial to whether the underlying conduct would have been a felony had the offense been committed in Michigan.  See *Quintanilla*, 225 Mich App at 479.

of a felony punishable by imprisonment for not more than 4 years or by a fine of not more than $2,000.00, or both.

The critical difference between these offenses is that the Ohio offense does not necessarily require the failure to provide support to be in violation of a court order whereas the Michigan offense does. Because the Ohio crime can be committed without there being a support order in place, it is possible for the same conduct to be a crime in Ohio but not in Michigan. Therefore, the knowledge that defendant was found guilty of this crime is not, on its own, sufficient to conclude that the underlying conduct would have been a felony in Michigan. Accordingly, sentencing defendant as a habitual offender with a violation of this Ohio statute serving as the predicate offense requires the court to ascertain some knowledge of the facts underlying the Ohio conviction.

Therein lies the problem: the record is bereft of information regarding defendant's 2006 Ohio conviction. The only information available to us is a statement in the PSIR that defendant's "second [felony] conviction was for non-support of dependents, where he was ordered to pay $16,408.53 in child support." It does not necessarily follow from the fact that defendant was ordered to pay child support that there was a prior child support order that defendant violated. In its brief, the prosecution matter-of-factly asserted that defendant "was court-ordered to pay child support in Lucas County, Ohio, and failed to do so." However, this statement was not accompanied by a citation to the record. The prosecution further asserts that defendant's "criminal history report indicates he was convicted of 'Nonsupport of Dependents, F5' which signifies that he was convicted of a fifth[-]degree felony punishable by a maximum of 5 years in prison and $2,500 fine." However, the PSIR does not have the "F5" designation accompanying defendant's nonsupport conviction, and the prosecution does not provide a citation to any other criminal history report. Regardless, establishing that defendant was guilty of a fifth-degree felony in Ohio does nothing to establish that this would have been a felony in Michigan. Ohio's nonsupport of dependents statute provides that a first offense can be a felony "if the offender has failed to provide support under division (A)(2) or (B) of this section for a total accumulated period of twenty-six weeks . . . ." Ohio Rev Code Ann 2919.21(G)(1). Division (A)(2), as noted, allows a conviction for nonsupport of dependents without the imposition of a court order. Thus, the statute specifically anticipates the possibility of a felony nonsupport conviction for a defendant who did not violate a court order.

Moreover, Ohio Rev Code Ann 2919.21(2) provides:

If the offender is guilty of nonsupport of dependents by reason of failing to provide support to the offender's child *as required by a child support order* . . . the court, in addition to any other sentence imposed, *shall* assess all court costs arising out of the charge against the person and require the person to pay any reasonable attorney's fees of any adverse party other than the state, as determined by the court, that arose in relation to the charge. [Emphasis added.]

There is nothing in the record suggesting that defendant was ordered to pay any such costs, suggesting that the conviction might not have arisen from the violation of an already-existing support order. Because we do not know if defendant's failure to support a dependent conviction

was committed in a violation of a court order, it necessarily follows that we do not know if the conduct giving rise to the Ohio conviction would have been a felony in Michigan.[4]

The appropriate remedy is dismissal of the habitual offender notice because the prosecution had a full and fair opportunity to establish that the Ohio offense would be a felony in Michigan, and it failed to present sufficient evidence. Indeed, the initial resentencing hearing was adjourned specifically to afford the prosecution the opportunity to adequately address whether defendant's Ohio conviction for possession of criminal tools would be a felony in Michigan. The initial hearing was adjourned in July, and the prosecution had until October to gather the information it needed to meet its burden. During that period, it decided to amend the information to list the nonsupport conviction as the predicate for defendant's habitual offender status but failed to admit *any* evidence regarding the underlying facts of the nonsupport conviction. Given these circumstances, affording the prosecution a second chance to meet its burden would be against the principles of fundamental fairness, and more importantly, it would implicate double jeopardy concerns because the prosecution's failure to present sufficient evidence of an equivalent prior conviction is analogous to the reversal of a conviction based on insufficient evidence. See *People v McClendon*, 426 Mich 855; 393 NW2d 811 (1986) (stating that reversal due to insufficiency of the evidence bars retrial "on double jeopardy grounds"); see also *People v Mitchell*, 301 Mich App 282, 294; 835 NW2d 615 (2013).

Therefore, the trial court erred by sentencing defendant as a habitual offender because its decision to do so was not supported by the record.

V. CONCLUSION

We vacate defendant's sentence for CSC-I because he was improperly sentenced as a habitual offender and remand for resentencing consistent with this opinion. However, we affirm the scoring of the sentencing guidelines. Therefore, on remand, defendant shall be sentenced with a guidelines range of 81 to 135 months. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Allie Greenleaf Maldonado

---

[4] We note that at the resentencing hearing the prosecutor made references to information she obtained from "Lucas County Job and Family Services," but this was never admitted into evidence. It was not referenced in the sentencing memorandum the prosecution filed in advance of the resentencing hearing, it was not admitted at the hearing, it was not cited or discussed in the appellate brief, and it was not provided as an appendix on appeal.