# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDRE VERTIS DENT,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2016

No. 325562
Wayne Circuit Court
LC No. 14-007422-FC

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant, Andre Dent, appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, carrying a weapon with unlawful intent, MCL 750.226, felon in possession, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as an habitual fourth offender, MCL 769.12, to 9 years to 20 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, the carrying a weapon with unlawful intent conviction, and the felon-in-possession conviction, all consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm defendant's convictions but remand the case to the trial court for further proceedings consistent with this opinion.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his convictions. "In challenges to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). "In applying this standard, a court must draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (citation and quotation marks omitted).

Brandon Adams, defendant's longtime friend and partner in a scavenging business, came to pick up defendant for work on the morning of April 16, 2014. When Adams arrived, he discovered his scavenging tools, a sledgehammer and crowbar that he normally kept in his van, in defendant's backyard. Adams waited near his van for defendant to come out of the house to ask him about the tools. After being informed that Adams was waiting for him, defendant ran

-1-

out of his house carrying a rifle and pointed it at Adams's head. The two began to argue and the exchange became heated. The argument was so loud that defendant's girlfriend's mother, Kelly Edwards, with whom defendant lived, woke up and went outside to find out what was going on and to try to break up the argument. According to Adams, defendant said, "I ain't fighting. I'm shooting," and then he fired the weapon twice. When defendant fired, Adams raised his arms, bent at the elbow, to shield his head, and one of the bullets struck Adams in the left hand.[1] Edwards testified that she heard a "little pop" and Adams said to defendant, "You tried to shoot me." Edwards testified that she saw blood when Adams tried to move his arm. At trial, Edwards testified that she did not see defendant with a gun and that any indication to the contrary in a signed statement she gave to police officers was inaccurate. Edwards testified that police officers who took her statement must have misinterpreted what she told them. We address the sufficiency of the evidence, as it relates to each convicted offense, below.

## A. ASSAULT WITH INTENT TO COMMIT GREAT BODILY HARM

In *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005), this Court explained the following regarding assault with intent to do great bodily harm less than murder:

> The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature. [Citations, quotation marks, and emphasis omitted.]

Notably, the 'assault' element of assault with intent to commit great bodily harm less than murder need only fit the traditional definition of an assault, which "is usually defined as an attempt or offer with force and violence to do a corporal hurt to another." *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013) (citations and quotation marks omitted). Hence, the offense does not require proof of injury. *Id*. "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citations omitted). "Intent may be inferred from a defendant's use of physical violence." *Dillard*, 303 Mich App at 377. "[T]he extent of any injury and the presumption that one intends the natural consequences of one's acts are both proper considerations for the jury." *Id*. at 378.

Under the facts of the case, we reject defendant's argument that there was insufficient evidence to support a finding that he intended to inflict serious injury of an aggravated nature or that he had a weapon. Defendant's intent can be inferred by his use of a deadly weapon and by the fact that he pointed the rifle at Adams's head, announced that he was going to shoot, and then fired two shots at Adams, striking him in the hand/wrist, which Adams had raised in order to

---

[1] Adams testified that he was shot in the hand, but when he showed the jury the injury he suffered in the shooting, he pointed to his wrist.

shield his head. Based on Adams's testimony, there was sufficient evidence of defendant's intent to do great bodily harm. Likewise, Adams's testimony provided sufficient evidence to find that defendant indeed had a rifle and that he pointed the rifle at Adams. Although defendant takes issue with Adams's credibility, this "Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## B. CARRYING A DANGEROUS WEAPON WITH UNLAWFUL INTENT

In *People v Mitchell*, 301 Mich App 282, 292-293; 835 NW2d 615 (2013), this Court reviewed the elements necessary to sustain a conviction of carrying a dangerous weapon with unlawful intent under MCL 750.226, and held that to establish this charge, the prosecution must prove beyond a reasonable doubt that the accused (1) carried a firearm or other dangerous weapon, and (2) at the time of going armed, had the intent to use the weapon unlawfully against another person. *Id*. at 293. Defendant argues that the jury should have believed his theory of the case and resolved conflicting testimony in his favor. Again, this "Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. The jury credited Adams's version of the events, which indicated that defendant came out of his house carrying a rifle, walked over to Adams and pointed his rifle at Adams's head. Defendant was angry and engaged in an argument with Adams. Defendant announced that he was going to shoot and indeed shot Adams in the hand/wrist. The evidence was sufficient to sustain a conviction of carrying a dangerous weapon with unlawful intent under MCL 750.226.

## C. FELON-IN-POSSESSION

The elements of felon-in-possession are: (1) the defendant possessed a firearm, (2) the defendant was previously convicted of a specified felony, and (3) the defendant has not formally regained eligibility to possess a firearm under MCL 28.424. See *People v Perkins*, 262 Mich App 267, 270-271; 686 NW2d 237 (2004), abrogated in part on other grounds by *People v Smith-Anthony*, 494 Mich 669; 837 NW2d 415 (2013). In this case, Adams testified that defendant possessed a firearm during the incident. And at trial, the prosecution and the defense entered into a stipulation "that the defendant was previously convicted of a felony and that as of April, 16, 2014, he had not had his right to bear arms restored[.]" The evidence was sufficient to sustain a conviction of felon-in-possession under MCL 750.224f.

## D. FELONY-FIREARM

The elements of felony-firearm are that "the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). See also MCL 750.227b. Weighing the credibility of the witnesses is the jury's duty, and this Court may not interfere with its assessment on appeal. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). We conclude that Adams's testimony, if believed, was sufficient to enable the jury to find beyond a reasonable doubt that defendant possessed a firearm while committing a felony.

## II. GREAT WEIGHT OF THE EVIDENCE

Next, defendant argues that he is entitled to a new trial because the verdict was against the great weight of the evidence. A defendant is required to move for a new trial in the lower court to preserve a claim that his conviction is against the great weight of the evidence. *Cameron*, 291 Mich App at 617-618. While defendant raised this argument in his motion to remand before this Court, because defendant did not move for a new trial below, his argument is not preserved for this Court's review. Because this issue is unpreserved, our review is limited to plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

Defendant's arguments are once again primarily focused on Adams's credibility. As a general rule:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Further, the resolution of credibility questions is within the exclusive province of the jury. [*People v Lacalamita*, 286 Mich App 467, 469-470; 780 NW2d 311 (2009) (quotation marks and citations omitted).]

Here, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. We note that defendant presented testimony favorable to his case from both Edwards and Roderick James, the son of Edwards and the brother of Angel Hill, defendant's girlfriend. These witnesses both testified at trial that defendant did not have a weapon. James also testified that he saw Adams stealing from defendant's backyard earlier that morning. But contrary to what defendant suggests, conflicting testimony and questions regarding the credibility of witnesses are not sufficient grounds for granting a new trial. *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998). This Court defers to the jury's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it," or it "contradicted indisputable physical facts or defied physical realities . . . ." *Id.* at 645-646 (quotation marks and citation omitted). That clearly is not the case here.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel at trial and at sentencing. Defendant filed a motion for remand with this Court raising the argument of ineffective assistance of counsel at trial, but this Court denied his motion.[2] Nevertheless, defendant has preserved his argument on appeal. Whether a defendant has been deprived of the effective assistance of counsel is a mixed question of fact and law and is reviewed, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "When no *Ginther*[3] hearing has been conducted," as is the case here, "review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

In order to establish that his trial counsel provided ineffective assistance, defendant must show that his counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and there is a reasonable probability that, but for the unprofessional errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012).

Defendant contends that defense counsel's failure to call his girlfriend, Angel Hill, her brother, Andre Edwards, and another witness, Deandre Price, as witnesses at trial amounted to ineffective assistance of counsel. He also faults trial counsel for failing to investigate these witnesses prior to trial. According to defendant, these witnesses were present during the alleged crime and would have supported and strengthened his primary defense that he did not have a gun and did not shoot Adams. Defendant states that he was prejudiced because he was convicted based on Adams's testimony when other eyewitness testimony was available that would have supported the defense. A defendant claiming ineffective assistance has the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Defendant's claim fails because there is no indication on the record that Angel Hill, Andre Edwards, or Deandre Price would have testified in support of defendant's theory of the case or specifically that defendant did not have a weapon during the incident. Defendant has not presented affidavits from these witnesses he claims could have supported his defense. Absent affidavits from these witnesses regarding what they would have testified to, we are unable to determine that counsel acted unreasonably in his investigation or decision-making in regard to these witnesses.

Moreover, we note that defendant already presented two witnesses—Edwards and James—who testified that they saw the altercation between defendant and Adams and that defendant did not have a gun, but the jury chose to believe Adam. On this record, we cannot conclude that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Vaughn*, 491 Mich at 669.

---

[2] *People v Dent*, unpublished order of the Court of Appeals, issued July 22, 2015 (Docket No. 325562).

[3] *People v Ginther*, 390 Mich 436, 443, 212 NW2d 922 (1973).

## IV. SENTENCING

Finally, defendant argues that he is entitled to resentencing because the trial court's scoring of offense variables (OVs) 2 and 3 was not supported by a preponderance of the evidence; moreover, he argues that OVs 1, 2, and 3 were neither found by the jury nor admitted by defendant, and instead were impermissibly determined by judicial fact-finding in violation of the Sixth Amendment. Defendant preserved his constitutional challenge to the scoring of the offense variables by filing a motion to remand with this Court. MCR 6.429(C); *People v Jackson*, 487 Mich 783, 795-796; 790 NW2d 340 (2010).[4]

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). However, whether the facts as found by the court are sufficient to justify the scoring conditions prescribed by statute is a legal question to be reviewed de novo. *Id.* This Court reviews de novo questions of constitutional law. *People v Lockridge*, 498 Mich 358, 373; 870 NW2d 502 (2015). This Court likewise reviews the interpretation and application of guidelines statutes de novo as a question of law. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

Recently, our Supreme Court significantly altered the standards for sentencing criminal defendants in our state. In *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2163; 186 L Ed 2d 314 (2013), the United States Supreme Court held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an "element" that must "be submitted to the jury and found beyond a reasonable doubt." In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under the Sixth Amendment to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." As a remedy, our Supreme Court "sever[ed] MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory." *Id*. The Court also struck "down the requirement in MCL

---

[4] In an order denying defendant's motion to remand in this case, this Court stated that defendant preserved his sentencing challenges for appeal by filing a motion to remand, "provided that they were not previously waived." *People v Dent*, unpublished order of the Court of Appeals, issued July 22, 2015 (Docket No. 325562). We also note that defendant appeared to waive his challenges to OVs 2 and 3 at sentencing; however, because he claims that counsel was ineffective with regard to OVs 2 and 3, we consider his challenges to those offense variables under an ineffective-assistance-of-counsel rubric. We also note that any waiver by defendant was only with regard to whether there was factual support for the scoring of OVs 2 and 3, and that he did not expressly waive any issues pertaining to whether the offense variables were scored by using judicially found facts. Hence, his constitutional challenge to the scoring of OVs 1, 2, and 3 is preserved pursuant to this Court's remand order.

769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure." *Id*. at 364-365. The Court held that the "guidelines minimum sentence range" is advisory only and "that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness." *Id*. at 365. Courts must continue to determine the applicable guidelines range and take it into account when sentencing a defendant. *Id*.

## A. OVS 2 AND 3 WERE SUPPORTED BY A PREPONDERANCE

We first turn our attention to defendant's challenges that OVs 2 and 3 were not supported by a preponderance of the evidence.[5] The trial court scored OV 2 at 10 points because "[t]e offender possessed or used a short-barreled rifle or a short-barreled shotgun." We disagree with defendant's assertion that the preponderance of the evidence did not support the trial court's scoring decision. Adams testified at trial that the stock of the rifle defendant used had been shortened; he did not mention the length of the barrel. However, the Presentence Investigation Report (PSIR) indicates that Adams reported the weapon was "a short barreled rifle." In light of the PSIR, and in light of the lack of explicit, contradictory testimony about the barrel length at trial, we find that a preponderance of the evidence supports the trial court's scoring decision on OV 2. See *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (a sentencing court may rely on the contents of the PSIR when scoring the guidelines). Defendant's trial counsel was not ineffective for failing to raise a meritless argument.

---

[5] We note that in *People v Blevins*, __ Mich App __, __; __ NW2d __ (2015) (Docket No. 315774), slip op at 10 n 7, a panel on this Court appeared to suggest that a sentencing court is not to score the guidelines using judicially found facts. To the extent the panel made such a suggestion, we find that it conflicts with our Supreme Court's decision in *Lockridge*. Indeed, "judicial fact-finding remains an important component of Michigan's sentencing scheme post-*Lockridge*." *People v Jackson (On Reconsideration)*, __ Mich App __, __; __ NW2d __ (2015) (Docket No. 322350), slip op at 10. That is, "[a]lthough Michigan's sentencing guidelines are 'constitutionally deficient,' our Supreme Court decreed in *Lockridge* that trial courts must still score the offense and prior record variables and assess the 'highest number of points possible' for each one." *People v Masroor*, __ Mich App __, __; __ NW2d __ (2015) (Docket Nos. 322280; 322281; 322282), slip op at 6. See also *Lockridge*, 498 Mich at 392 n 28 ("Our holding today does nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, whether using judge-found facts or not."). The constitutional problem *Lockridge* identified with judicial fact-finding in our sentencing scheme is not that it occurs, but that it "*mandatorily* increase[d] the floor of the guidelines minimum range." *Id*. at 364. To remedy the Sixth Amendment violation—that judicially found facts are "used to compel an increase in the mandatory minimum punishment a defendant receives"—the Court held that the guidelines are "advisory only." *Id*. at 399. Thus, trial courts are to score the guidelines using judicially found facts, but the resulting sentencing range is only advisory, not mandatory.

We also find no merit in defendant's assertion that the scoring of OV 3 was not supported by a preponderance of the evidence or that trial counsel was ineffective for failing to object to the trial court's scoring decision. The trial court scored OV 3 at 10 points pursuant to MCL 777.31(1)(d), which requires a score of 10 points if "[b]odily injury requiring medical treatment occurred to a victim[.]" Adams testified that he suffered a gunshot wound to the hand/wrist and that he went to the hospital for medical treatment. This was sufficient to establish an injury requiring medical treatment, and it does not matter whether Adams's medical records were produced at trial. See MCL 777.33(3) ("As used in this section, 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment."); *People v Gibbs*, 299 Mich App 473, 492; 830 NW2d 821 (2013).[6]

### B. *LOCKRIDGE* ISSUE

While we disagree with defendant regarding whether a preponderance of the evidence supported the scoring of the challenged offense variables, we agree with his assertion that he has identified a constitutional error under our Supreme Court's decision in *Lockridge*. That is, the OVs were scored on the basis of facts that were neither admitted by defendant nor necessarily found by the jury's verdict, and that such judicially found facts *were used to mandatorily increase* the floor of the guidelines range. *Lockridge*, 498 Mich at 373-374.

With regard to OV 1, the trial court scored 25 points because a firearm was "discharged at or toward a human being." MCL 777.31(1)(a). Although the jury's verdict necessarily found that defendant had a firearm[7] and he used that firearm to perpetrate an assault with intent to commit great bodily harm, no portion of the jury's verdict necessarily found that the firearm was discharged at Adams or any other person. Indeed, the elements of assault with intent to commit great bodily harm did not require the jury to find that defendant discharged the firearm; simply displaying it in a threatening manner was enough. See *Brown*, 267 Mich App at 147 (describing the elements of the offense as: "(1) an attempt or threat with force of violence to do corporal harm to another)" and "(2) an intent to do great bodily harm less than murder."). Moreover, none of defendant's offenses required the jury to find, beyond a reasonable doubt, that defendant shot Adams. Notably, assault with intent to do great bodily harm less than murder does not require the jury to find that an injury occurred, see *Dillard*, 303 Mich App at 378, meaning that the jury did not necessarily find that defendant shot Adams—or shot at him, for that matter. Accordingly, the trial court's score of OV 1 was based on facts that were neither found by the jury nor admitted by defendant.

---

[6] Although defendant does not contest whether a preponderance of the evidence supports a score of 25 points under OV 1, we nevertheless find, based on Adams's testimony that defendant fired two shots at him and hit him with one of the shots, that a preponderance of the evidence supported the trial court's scoring decision on OV 1. See MCL 777.31(1)(a).

[7] This is apparent from defendant's conviction for felony-firearm.

With regard to OV 2, we note our discussion above that the trial court scored 10 points for the use of a "short-barreled rifle or short-barreled shotgun." MCL 777.32(1)(c). The jury's verdict is silent on the length of the barrel of the gun used, as the length of the barrel was not pertinent to any of defendant's convictions. Nor is there any record evidence of defendant admitting to the length of the barrel of the rifle. As such, it is apparent that the trial court's score of OV 2 was based on facts that were neither found by the jury nor admitted by defendant.

Finally, we note that OV 3 suffers from the same flaw as OVs 1 and 2. The trial court scored 10 points for OV 3 based on the conclusion that "[b]odily injury requiring medical treatment occurred to a victim," MCL 777.33(1)(d). While Adams testified that he was injured and taken to the hospital for treatment, the jury's verdict did not necessarily conclude that Adams was injured, because physical injury is not an element of any of the offenses of which the jury found defendant guilty. See *Dillard*, 303 Mich App at 378. Thus, OV 3 was scored based on facts neither found by the jury nor admitted by defendant.

## C. REMEDY

Looking at defendant's total OV score and the corresponding sentencing grid, it is apparent that judicially found facts mandatorily increased defendant's guidelines minimum sentence range in this case. "As such, under *Lockridge*, [defendant's] Sixth Amendment rights were violated at sentencing." *People v Stokes*, 312 Mich App 181, 194; __ NW2d __ (2015). See also *Lockridge*, 498 Mich at 373-374. Therefore, it is necessary to remand the case to the trial court in accordance with the remand procedure set forth in *Lockridge* to determine whether the court would have imposed a materially different sentence but for the constitutional error. See *Lockridge*, 498 Mich. at 395-399. The procedure to be followed, which is modeled on that adopted in *United States v Crosby*, 397 F3d 103 (CA 2, 2005), is as follows:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, [MCR 6.425,] if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Lockridge*, 498 Mich at 398 (quotation marks and citation omitted).][8]

---

[8]This Court determined in *People v Stokes*, 312 Mich App at 198, that the *Crosby* remand procedure outlined in *Lockridge* for unpreserved appellate claims of judicial fact finding in sentencing also should be applied to preserved challenges, such as the one in the instant appeal.

We affirm defendant's convictions but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering