# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEYONTE MARKESE-HENRY LOVE,

Defendant-Appellant.

UNPUBLISHED
December 18, 2018

No. 340403
Genesee Circuit Court
LC No. 17-040883-FC

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 375 to 720 months' imprisonment on the second-degree murder conviction, 30 to 60 months' imprisonment on the carrying a concealed weapon conviction, and two years' imprisonment on the felony-firearm conviction, with the murder sentence to run consecutively to the felony-firearm sentence. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case stems from the October 22, 2016 shooting and killing of Melvin Morgan III, who was the boyfriend of defendant's former wife, Shamonica Jolly. Jolly married defendant in May 2015. They had one child together, and Jolly also had two older children who had a different father. Jolly and defendant separated in approximately March 2016, and started living apart. They filed for divorce in June 2016. According to Jolly, she began a romantic relationship with the victim at some point after she and defendant separated. Eventually, Jolly became pregnant with the victim's child.

During the afternoon of October 22, 2016, Jolly and the victim had been running errands after dropping off Jolly's children at the home of Toveka Owens, who was the stepmother of Jolly's half-brother. Jolly and the victim later returned to Owens's house.

Jolly testified that at some point after she and the victim had returned to the house, she walked into the kitchen and saw defendant and Owens. The victim was in the living room. When Jolly entered the kitchen, defendant asked if he could "talk to [her] for a minute." Jolly testified that the victim was standing in the doorway of the kitchen by this point and that before

-1-

she could respond to defendant's request, the victim stated that Jolly "really don't have anything to discuss." Defendant responded, "don't worry about it." According to Jolly, a verbal altercation between defendant and the victim ensued at that point. Jolly further testified that defendant indicated that he and the victim could "take it outside," and the victim told defendant to "put down the gun and fight like a man," although Jolly also testified that she did not see a gun anywhere at this point. Defendant walked away and started to leave through the side door. Jolly testified that as defendant was walking toward the door, the victim yelled, "That's okay. If I can't get to you, I'll get to your mom." Defendant's mother was not present at the house. Jolly further testified that defendant turned around, came back up the stairs, pulled a gun out of the pocket of his hooded sweatshirt, and pointed the gun at the victim. Defendant and the victim were "exchanging words back and forth," but Jolly did not remember what they actually said. When asked during her trial testimony what happened next, Jolly testified, "I just heard [defendant] blurt out, watch out, and the gun went off." Defendant was "two steps" away from the victim.

Owens testified that defendant and the victim had a verbal altercation, during which defendant told the victim to come outside and the victim responded, "no, why so you can shoot me outside?" Owens further testified, "When he was saying—talking and saying some words, [defendant] was basically walking out that dog gone [sic] door 'til [the victim] said something he shouldn't have said." According to Owens, the victim said, "I'm gonna beat your ass in front of your mama and then I'm gonna beat your mama ass." Owens testified that defendant turned around and said, "remember what I told you yesterday." Then, according to Owens, defendant turned around and said, "I'm sorry Aunt Tee," after which defendant shot the victim one time.

The victim was declared dead on the scene.

As previously noted, the jury found defendant guilty of second-degree murder, CCW, and felony-firearm. The jury acquitted defendant of the remaining charges. Defendant now appeals as of right.

## II. MRE 404(b)

On appeal, defendant first argues that the trial court abused its discretion in admitting other acts evidence under MRE 404(b). Defendant specifically challenges the admission of (1) Jolly's testimony about prior incidents where defendant pointed a gun at the victim and where defendant threatened to shoot the victim; and (2) testimony by Michigan State Police Detective Trooper Jason Walters indicating that Jolly and the victim had obtained personal protection orders against defendant.[1]

---

[1] In addition to the evidence described above, defendant also references as other-acts evidence Jolly's testimony about a previous incident where defendant punched her and broke her phone. However, there was nothing about this evidence in the prosecution's pretrial motion to admit other-acts evidence under MRE 404(b). Rather, the prosecution filed a separate motion, related solely to the domestic violence charge, to admit evidence of other acts of domestic violence

Before trial, the prosecution moved to admit other-acts evidence under MRE 404(b) regarding previous instances observed by Jolly where defendant had threatened the victim and pointed a gun at him, as well as evidence that the victim obtained a personal protection order against defendant. The referenced incidents occurred between March 2016, when Jolly began dating the victim, and October 22, 2016, when the shooting occurred. The prosecution argued that the proposed other-acts evidence was probative of motive, intent, and absence of mistake or accident because it demonstrated that "defendant had motive to shoot the victim, he intended to shoot the victim, and that there was no accident or mistake in pulling a gun on and shooting the victim." The prosecution further argued that the proposed evidence was logically relevant to proving the intent element of first-degree premeditated murder, that the other-acts evidence was necessary to allow the prosecution to prove the difficult-to-establish element of defendant's intent, and that prior threats of violence by defendant against the victim were admissible in a homicide case to prove premeditation. Additionally, the prosecution argued that defendant had denied being at Owens's house on the day of the shooting, and the other-acts evidence was therefore also relevant to establishing identity. The prosecution maintained that other-acts evidence used for the purpose of demonstrating defendant's intent had significant probative value in this case such that it was not barred by MRE 403.

Defendant opposed the motion, arguing that the proposed other-acts evidence was inadmissible under MRE 404(b) because the evidence of the prior altercations between defendant and the victim showed only an intent to commit assaults rather than the intent to kill as is required to prove murder. Defendant further argued that such evidence would be prejudicial due to its obvious tendency to show that defendant possessed bad character and had acted in conformity therewith. Additionally, defendant argued that evidence that the victim obtained a personal protection order against defendant should be barred by MRE 403 because this evidence had only slight probative value but a strong likelihood of creating confusion among the jury by leading the jury to infer that a judge had already determined that defendant had threatened the victim with death or physical injury.

---

committed by defendant against Jolly pursuant to MCL 768.27b. Defendant was acquitted of the domestic violence charge. On appeal, defendant frames his issue as one involving MRE 404(b) and does not include any discussion of MCL 768.27b. He also does not make any argument that this evidence of previous domestic violence incidents involving Jolly was inadmissible under MCL 768.27b or somehow affected the jury's decision to convict him of other charges, namely the murder of the victim. Therefore, we conclude that defendant has abandoned any potential issue involving this particular category of evidence. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

The trial court held a hearing on the motion, after which it ruled that MRE 404(b) did not bar admission of evidence that a personal protection order had been issued or evidence that Jolly had observed defendant threatening the victim and pointing a gun at the victim on previous occasions. The trial court reasoned as follows:

> It appears to the Court that the incident with respect to this Shamonica [Jolly] who testified all come under the category of [MRE] 404[(b)] that would be relevant—highly relevant and also very, very probative of the issues relating to intent, also identity, absence of mistake, obviously in this case the Court doesn't know if there's a real issue in identity but certainly it would be highly probative of identity and certainly and it doesn't matter if they are contemporaneous with, or prior to, or subsequent to the conduct at issue in the case which allegedly occurred on October 22, of 2016. The Court believes that counsel clearly make it known to the jury as to when these incidents occurred and I have no problem giving a limiting instruction that I find the probative value outweighs the prejudicial effect as long as we have the limiting instruction to make sure the time frame of which when they did occur.

At trial, the defense theory presented to the jury, both in defense counsel's opening statement and closing argument, was that there was no physical evidence establishing that defendant was present at Owens's house at the time but that even if the jury believed the testimony of Owens and Jolly that defendant was present, defendant was provoked by the victim and there was no premeditation or deliberation.

Regarding the other-acts evidence, Jolly testified at trial that when she first started dating the victim, she lived in an apartment complex and defendant would visit her apartment at times when the victim was also there. On one occasion, defendant arrived at the apartment unannounced while the victim was cooking, and defendant "pulled out a gun on him." According to Jolly, defendant "pulled a gun out, and he put it to [the victim's] head." As he put the gun to the victim's head, defendant told the victim that he "was lucky." On another occasion, Jolly and the victim went to pick up Jolly and defendant's son from defendant, and defendant "pulled a gun" out from a car as the victim was standing outside the victim's car. Jolly testified that defendant just held the gun in his hand and that defendant told the victim, "when they come face-to-face that he's never going to fight with him. He will shoot him."

Additionally, Walters testified that he had received information during the course of his investigation that Jolly and the victim had obtained personal protection orders against defendant. Walters read from the personal protection order that the victim had obtained against defendant, which was admitted into evidence. The personal protection order indicated that defendant was prohibited from stalking the victim; this included approaching or confronting the victim, as well as threatening to kill or injure the victim.

On appeal, defendant maintains that the trial court erred by admitting this other-acts evidence under MRE 404(b) because this evidence only showed that defendant had a propensity to commit assaultive behavior and brandish weapons, and the prosecution failed to show that the probative value of the evidence was sufficient to support the asserted purposes for admission.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013) (quotation marks and citation omitted). The "trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). "[W]hether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Denson*, 500 Mich at 396.

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), the Michigan Supreme Court articulated the following standard for addressing the admissibility of evidence under MRE 404(b):

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

A. PROPER NONCHARACTER PURPOSE

With respect to the first prong of the *VanderVliet* test, our Supreme Court in *Denson* explained as follows:

[T]he question is whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence. The prosecution bears the burden of establishing that purpose. MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question. On the other hand, such other-acts evidence may be admissible whenever it is also relevant to a noncharacter purpose, such as one of the purposes specifically enumerated in MRE 404(b)(1). [*Denson*, 500 Mich at 398-399 (citations omitted).]

In this case, defendant was originally charged with first-degree premeditated murder, the elements of which are "(1) the intentional killing of a human (2) with premeditation and

deliberation," *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). The prosecution explained in the trial court that it sought to admit the other-acts evidence regarding defendant's interactions with the victim during the period after Jolly and the victim started dating and which involved threats and gun brandishing in order to demonstrate defendant's motive and intent for purposes of establishing the premeditation element. "Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998). "[F]actors that may be considered to establish premeditation include the following: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *Id*. at 300. In the instant case, the prosecution indicated that premeditation was supported by the other-acts evidence, which showed a previous relationship between defendant and the victim that involved incidents where defendant brandished a gun and threatened the victim. Further, a reasonable inference could be made from the fact that these threats occurred after Jolly separated from defendant and began dating the victim that defendant's threatening behavior and the shooting were connected to a motive based on jealousy and retribution. Thus, the prosecution articulated a proper noncharacter purpose for admission of the other-acts evidence under MRE 404(b).

## B. RELEVANCE

Regarding the second prong of the *VanderVliet* test, the *Denson* Court explained that logical relevance is determined by MRE 401 and MRE 402. *Denson*, 500 Mich at 400. MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under MRE 402, "[e]vidence which is not relevant is not admissible," and "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court." "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id*. (quotation marks and citation omitted). The probative value of the other-acts evidence must also be established by the prosecution, and "[e]vidence is probative if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id*. at 401-402 (quotation marks and citation omitted). The proposed evidence "must be probative of something *other* than the defendant's propensity to commit the crime," and "the court must determine whether the prosecution has established some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in [the] case . . . ." *Id*. at 402 (quotation marks and citations omitted; alteration and ellipsis in original).

In this case, the materiality requirement was established. The prosecution was required to prove beyond a reasonable doubt that defendant intentionally killed the victim "with premeditation and deliberation" in order to convict him of first-degree murder. *Oros*, 502 Mich at 239. Accordingly, the question whether the shooting was premeditated was a fact "of

consequence" to the case, making it material. *Denson*, 500 Mich at 401. Furthermore, "[p]roof of motive in a prosecution for murder, although not essential, is always relevant," and it is permissible under MRE 404(b)(1) to admit evidence of other acts to prove motive. *People v Rice*, 235 Mich App 429, 440; 597 NW2d 843 (1999).

Additionally, the other-acts evidence at issue was probative of premeditation, intent, and motive. The other-acts evidence of defendant's repeated threats to the victim that included brandishing and pointing a gun at the victim tended to show that there was so much tension between defendant and the victim after the victim started dating defendant's former wife that defendant had contemplated shooting the victim, negating the portrayal of the fatal shooting as a somehow spontaneous act by defendant. In other words, the other-acts evidence tended to make it more likely that the shooting was the result of defendant's considered formation of the desire to shoot the victim arising out of the nature of their respective relationships to Jolly, rather than being the result of thoughtless action. "[T]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Oros*, 502 Mich at 240 (quotation marks and citation omitted). Hence, the other-acts evidence in this case established an intermediate inference other than a mere inference of defendant's character for violence, which was probative of material facts related to establishing proof of the first-degree murder charge. *Denson*, 500 Mich at 401-402. Because the other-acts evidence satisfied both the materiality and probative value requirements to establish logical relevance, it satisfied the second prong of the *VanderVliet* test. *Id*. at 401.

### C. MRE 403 BALANCING UNDER THE *VANDERVLIET* TEST

Next, the third prong of the *VanderVliet* test requires application of MRE 403. *VanderVliet*, 444 Mich at 74-75. MRE 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As our Supreme Court has explained, MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. Unfair prejudice refers to a situation "where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (quotation marks and citation omitted). This Court has also described such unfair prejudice as "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005).

In this case, the other-acts evidence was more than marginally probative of intent, premeditation, and motive because it tended to demonstrate that the killing was more likely the product of defendant's ongoing desire to shoot the victim as opposed to a rash, spontaneous act.

Further, the other-acts evidence did not inject into the case "extraneous" considerations directed to invoke jury bias, sympathy, anger, or shock. We conclude that the other-acts evidence was not barred by MRE 403.

## D. CONCLUSION

For the above reasons, we conclude that the trial court's decision to admit the other-acts evidence was not outside the range of reasonable and principled outcomes and thus did not constitute an abuse of discretion. We additionally note that the trial court also provided limiting instructions to the jury regarding the other-acts evidence. Defendant has failed to establish error requiring reversal.

## III. VOLUNTARY MANSLAUGHTER INSTRUCTION

Defendant next argues that the trial court abused its discretion by failing to give an instruction for voluntary manslaughter, thereby depriving him of his right to have a properly instructed jury.

We review de novo jury instruction issues that involve questions of law, but we review for an abuse of discretion "a trial court's determination whether a jury instruction is applicable to the facts of the case." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

As we have previously stated:

> When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is supported by a rational view of the evidence. To prove that a defendant committed voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions. However, provocation is not an element of voluntary manslaughter; rather, it is a circumstance that negates the presence of malice. . . . [T]he degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. Further, [i]n order for the provocation to be adequate it must be that which would cause a reasonable person to lose control. Whether the provocation was reasonable is a question of fact; but if no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation. [*People v Mitchell*, 301 Mich App 282, 286-287; 835 NW2d 615 (2013) (quotation marks and citations omitted; second alteration in original).]

Our Supreme Court has explained that words alone generally do not constitute adequate provocation for purposes of voluntary manslaughter, especially when the words are mere insults rather than words "of an informative nature." *People v Pouncey*, 437 Mich 382, 391; 471 NW2d 346 (1991).

-8-

In this case, the trial court denied defendant's request for a voluntary manslaughter instruction, stating that it found that the words in this case did not "really rise to words of an informative nature." We conclude that the trial court did not abuse its discretion by determining that a voluntary manslaughter instruction was inapplicable to the facts of this case. Defendant shot the victim following a verbal altercation between the two that included a statement by the victim that can clearly be understood from the context as an insult directed at defendant and involving a reference to defendant's mother. Such a brief, run-of-the-mill, and unimaginative insult could hardly be considered one that would fall outside the general principle that mere words do not constitute adequate provocation. See *Pouncey*, 437 Mich at 391. To the extent the insult was phrased as a threat, such a threat was empty and innocuous considering that defendant's mother was not present, making it impossible for the victim to carry out such a threat at that time. The statement was simply not of the kind that would cause a *reasonable* person to lose control. *Mitchell*, 301 Mich App at 287.

Thus, because a rational view of the evidence did not support a voluntary manslaughter instruction, *Id*. at 286, the trial court's ruling was not an abuse of discretion.

## IV. PROSECUTORIAL MISCONDUCT

Finally, defendant argues that the prosecutor made an improper appeal to civic duty during her rebuttal argument.

Defendant cites the following portion of the prosecutor's closing rebuttal argument in support of his argument the prosecutor made improper remarks:

> I'll agree with [defense counsel] on one thing. You hold the most power in this room, you have a great duty ahead of you when you go back to deliberations; and you should think about the evidence carefully. Because what you also hold in your hands is justice. And think about what doing justice means to you because justice is following the law, justice is seeing that the elements are met beyond a reasonable doubt which we submit they have been easily. And justice is holding someone accountable for breaking the law. That's the task you have in front of you. Because what you also hold in your hands and have in front of you is justice for [the victim's] family.

Because defendant failed to contemporaneously object to these comments, defendant's prosecutorial misconduct issue is unpreserved and our review is for plain error. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014) (citation and quotation marks omitted). "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "A prosecutor may not make a civic duty argument that appeals to the fears and prejudices of the jurors because this injects issues broader than the guilt or innocence of the accused into the trial." *McGhee*, 268 Mich App at 636. "[A]sking the jury to

convict on the basis of the evidence produced at trial" is not an appeal to civic duty. *People v Bahoda*, 448 Mich 261, 284-285; 531 NW2d 659 (1995).

In this case, the prosecutor's rebuttal comments were merely responsive to defense counsel's closing argument, during which he stated:

> Now, ladies and gentlemen, as you retire to the jury room for your deliberations I'm going to ask you to please keep a few things in mind. Please remember how high the stakes are here; you hold this man's liberty in your hands. You hold his fate in your hands; please don't take that lightly. Please remember that you guys are the ones in the courtroom with the most power, all right. Your vote belongs to you and no one else; and no one can tell you how to vote, you remember that. And, ladies and gentlemen, please remember that your decision will be permanent. That once you render a verdict there's no coming back in and changing your vote, changing your mind; your decision's permanent. Ladies and gentlemen, please exercise your power with dignity, and please be conscientious; and please give the presumption of innocence and the reasonable doubt standard the respect they deserve. Thank you.

Moreover, it is clear from examining the prosecutor's statements in context that they merely constituted a request that the jury do justice by thinking about the evidence, following the law, and "seeing that the elements are met beyond a reasonable doubt." There was nothing improper about these comments, as this is precisely what the role of the jury is. The prosecutor did not imply that the jury should reach a decision based on anything other than the evidence and thus did not make an improper appeal to civic duty. *Bahoda*, 448 Mich at 284-285.

Defendant further argues in the alternative that he received ineffective assistance of counsel based on defense counsel's failure to object to the above comments made the prosecutor during rebuttal argument. However, as we have already explained, the comments were not improper. An objection would have therefore been meritless. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Therefore, defendant has not demonstrated that he was denied the effective assistance of counsel.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering