*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 19, 2023

v

No. 359829
Berrien Circuit Court
LC No. 2020-001888-FH

ALLEN ZAURIL FORD,

Defendant-Appellant.

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

A jury convicted Allen Zauril Ford of possession with intent to deliver less than 50 grams of fentanyl, second offense, MCL 333.7401(2)(a)(*iv*); maintenance of a drug house, second offense, MCL 333.7405(1)(d); felon in possession of a firearm (felon-in-possession), MCL 740.224(f); and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Although the trial was not perfect, Ford has presented no errors that prejudiced the outcome. We affirm.

## I. BACKGROUND

In June 2020, the Michigan State Police Southwest Enforcement Team executed a search warrant at a Benton Harbor residence. Ford slept in the northwest bedroom of that home with his girlfriend, Ashley Walton. In that room, the searching officers found evidence of narcotics activity and a handgun. The officers found no evidence of criminal activity anywhere else in the house.

In the northwest bedroom, the officers also found a digital scale coated with white residue on top of a dresser. That residue later tested positive for methamphetamine, cocaine, and fentanyl. Detective Jeremiah Gauthier testified that drug users do not commonly use a scale and do not commonly mix meth, cocaine, and fentanyl together, but drug dealers do. Next to the scale was a credit card, rolled up coins, and two $20 bills. Detective Gauthier testified that a credit card is commonly used by dealers to measure an exact amount or by users to make lines. Detective Gauthier also testified that users commonly use paper bills to snort controlled substances, but that these $20 bills did not bear traces of controlled substances.

On top of a cabinet, the officers found an unopened black shoebox. Inside was a pair of shoes in Walton's size. A handgun rested on top of the shoes. Inside the cabinet, the officers found white powder stored in a piece of paper topped by tissue paper. Most of the powder was loose and had spilled onto the shelves. The powder later tested as fentanyl and weighed 0.058 grams.

Inside the bedroom closet, the officers found a safe and a pile of shoeboxes. The safe contained $4,020 and two baggies containing 0.633 grams of fentanyl. Detective Gauthier testified that the average dose a user purchases is a tenth or two tenths of a gram and that a user usually does not purchase more than two doses at a time. A clear plastic bag with a corner missing rested on top of the shoeboxes. Detective Gauthier surmised that this was leftover packaging material. The officers found no other paraphernalia associated with drug use and no other packaging materials in the bedroom.

As other officers searched the remainder of the residence, Detective Gauthier interviewed Ford and Walton. Ford waived his *Miranda*[1] rights and voluntarily spoke with the detective. Ford indicated that the controlled substances and related items inside the bedroom belonged to him. According to Detective Gauthier, Ford also stated that there was a stolen handgun in a shoebox inside the bedroom. At trial, Ford denied knowing that there was a handgun in his bedroom, let alone a stolen handgun in a shoebox. Detective Gauthier found $147 in Ford's front pants pocket. Detective Gauthier inquired, "I'm assuming that the money in your pocket is from selling dope." Ford responded with a "nonverbal head [nod]" and then stated that "the money in his safe was not from selling drugs, [because] it was from unemployment." When Detective Gauthier asked a second time whether "the money in [his] pocket is from selling dope," Ford again nodded and confirmed that "yes, that's dope money."

Detective Gauthier also interviewed Walton. He described that Walton admitted to witnessing Ford selling controlled substances from the residence. However, Walton denied making that statement at trial.

At trial, Detective Gauthier testified as an expert in the sale and distribution of controlled substances. He described that a dealer commonly keeps sale proceeds close to the product. He explained that the amount of fentanyl found during this search is an amount typically purchased for the purpose of sale and distribution. He then explained that dealers often keep a firearm in close proximity to their product and proceeds for protection. Placing the gun in a shoebox kept it adequately hidden while easily accessible. Detective Gauthier further testified that a gram of heroin sells for between $140 and $150, and a gram of either cocaine or meth sells for between $100 and $120. He therefore deduced that the $147 in Ford's pocket was from selling one gram to a customer.

Ford testified at trial and explained that he was a drug user, not a dealer. He claimed that earlier in the day, a dealer had brought a sample to the house and Ford did a line on the dresser next to the digital scale. That dealer was scheduled to return with a gram to sell and Ford kept the purchase money in his pocket. Ford admitted that he normally purchased a gram or two at a time

---

[1] *Miranda v Arizona*, 348 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

and used his digital scale to confirm the weight. Even though he was still intoxicated when he spoke to Detective Gauthier, Ford testified that he did not physically nod his head in affirmation when asked whether the $147 was from selling controlled substances.

Ford then explained that he wanted to return the two baggies of fentanyl found in the safe to his dealer. He only used cocaine and marijuana, not meth or fentanyl. The COVID-19 pandemic created a scarcity of controlled substances that led dealers to sneak in other substances. He bought what he believed was cocaine, but he received cocaine cut with fentanyl. He stored the two baggies in his safe to return for a refund. Detective Gauthier testified that if a user wanted to return a purchase, the normal procedure is to call the dealer and complain right away.

Walton also testified for the defense. She claimed ownership of the handgun in the shoebox. She explained that she kept the handgun in her shoebox on top of the cabinet to keep it out of the reach of children in the home. Although Walton shared the bedroom with Ford, Ford kept most of his belongings in a different room. However, Walton admitted that the controlled substances and related items belonged to Ford.

At the close of trial, the jury convicted Ford of various charges against him, but acquitted him of possession of meth and cocaine. Ford now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Ford contends that the prosecution presented insufficient evidence to support his convictions for maintaining a drug house, felon-in-possession, and felony-firearm. We review de novo a challenge to the sufficiency of the evidence, reviewing the evidence and all reasonable inferences in the light most favorable to the prosecution to determine if a rational trier of fact could find the elements of the charged offense proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). Circumstantial evidence and reasonable inferences derived from the evidence may constitute sufficient proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). But in conducting our review, we "will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

MCL 333.7405(1)(d) makes it illegal to:

[k]nowingly keep or maintain a . . . dwelling . . . or other structure or place that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances or that is used for keeping or selling controlled substances in violation of this article.

"The phrase 'keep or maintain' implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence, such as perhaps a secret compartment or the like, that conduces to the same conclusion." *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007). Ford contends that there was no evidence of continuity of either the selling or use of controlled substances. He emphasizes that the prosecution presented no evidence that anyone had come to the home to purchase drugs, not even through a "controlled buy." However, the evidence presented does support a continuity of "keeping . . . controlled substances."

Ford testified that he had lived in the home with Walton for eight months before the search. He admitted ownership of the controlled substances in his safe and in and on the cabinet, as well as of the scale and the discarded packaging. The state of the cabinet suggested regular storage of a significant quantity of narcotics as fentanyl had been spilled onto the shelves. As Ford denied using fentanyl, the only reasonable explanation for the fentanyl in the cabinet was to cut into other substances that would be offered for sale. Ownership of the digital scale is also more reasonably explained as a tool for measuring drugs for sale, not purchase. From this evidence, the jury could infer that Ford kept or maintained a house "used for keeping . . . controlled substances."

Ford further contends that he cannot be convicted of maintaining a drug house because the primary purpose of the residence was habitation, not keeping or using controlled substances. In *Thompson*, 477 Mich at 156-157, the Supreme Court adopted a test described by the Alaska Court of Appeals: " 'The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property[.]' " Quoting *Dawson v State*, 894 P2d 672, 678-679 (Alas App, 1995). See also *People v Norfleet*, 317 Mich App 649, 659; 897 NW2d 195 (2016).

The prosecution presented sufficient evidence from which the jury could infer that *a* substantial purpose of this house was to keep controlled substances. Ford kept controlled substances for sale in the house, along with the means of protecting his wares. That the house was also used as a residence for the keeper of those substances does not negate the evidence that another important or significant purpose of the house was to keep controlled substances.

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Ford also challenges the evidentiary support for his felon-in-possession and felony-firearm convictions. Ford contends that the underlying felony for felony-firearm was not established as he possessed only 0.6 grams of controlled substances for personal use. And Ford asserts that the weapons possession element for both charges cannot be proven as Walton owned and kept the firearm found in the house.

The elements of felon-in-possession are (1) the defendant is a felon, (2) who possessed or carried a firearm, (3) before his right to do so was formally restored under MCL 28.424. *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). The elements of felony-firearm are that the (1) defendant carried or possessed a firearm, (2) during the commission, or attempted commission, of a felony. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). The crime of felon-in-possession may constitute the underlying felony for felony-firearm. See *People v Dillard*, 246 Mich App 163, 168-169; 631 NW2d 755 (2001). The amount of controlled substances found in this case is irrelevant because the jury convicted Ford of two felonies related to these substances.

Possession of a firearm can be either actual or constructive, *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012), joint or exclusive, *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). Ford did not have the gun on his person during the search. Accordingly, the prosecution relied on a theory of constructive possession.

The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband. Although not

-4-

in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. [*Minch*, 493 Mich at 91-92 (cleaned up).]

"[The Supreme] Court has described constructive possession of an article in the context of firearms as when there is proximity to the article together with indicia of control." *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010) (quotation marks and citations omitted).

Ford and Walton both indicated that the firearm belonged to Walton and was hidden in a box with a pair of Walton's shoes. However, Ford had easy access to the handgun. The gun in the shoebox was kept immediately next to Ford's controlled substances and digital scale. Ford could control the gun at any time, just as easily as its owner. Given his drug activity, the jury could infer that Ford intended the placement of the handgun for the protection of his inventory and proceeds. The evidence supported "a sufficient nexus" between Ford and the handgun for the jury to find constructive possession. Accordingly, sufficient evidence supported Ford's weapons related convictions.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Ford contends that his trial counsel was ineffective as he introduced evidence of Ford's prior conviction of possession with intent to deliver and failed to object when the prosecutor made a propensity argument during closing. Ford requested a remand for an evidentiary hearing on this issue. We can adequately consider Ford's challenges on the existing record, however.

To establish the right to a new trial based on the ineffective assistance of counsel, a defendant must satisfy two components: "First, the defendant must show that counsel's performance was deficient . . . .  Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that counsel's performance was deficient, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664.

On direct examination, defense counsel questioned Ford about his prior convictions as follows:

> *Q*: Okay.  Mr. Ford, you have a prior conviction, do you not?
>
> *A*: Yes, sir.
>
> *Q*: And you have a prior conviction for drugs; is that correct?
>
> *A*: Yes, sir.
>
> *Q*: And what year was that?

*A*: 2016, '17, I believe.

*Q*: All right.  You also have used drugs?

*A*: Yes, sir.

*Q*: Do you buy drugs to use them?

*A*: Yes, sir.

On cross-examination, the prosecutor clarified the nature of Ford's prior drug conviction:

*Q*: I believe you just testified that you have a prior drug conviction; is that correct?

*A*: Yes, ma'am.

*Q*: You said that's from when?

*A*: 2016-2017.

*Q*: And what was that conviction for?

*A*: Cocaine.

*Q*: Possession of cocaine, or delivering of cocaine?

*A*: Yes.  Possession.  Possession with the intent to deliver cocaine.

*Q*: Possession with intent to deliver cocaine?

*A*: Uh-huh (affirmative).

*Q*: Okay.  So you have possess with intent to deliver before; is that right?

*A*: Yes.

Defense counsel opened the door and introduced evidence of Ford's prior drug conviction.  His likely strategy was to convince the jury that Ford was a habitual drug user who only possessed the fentanyl at issue with the intent to use rather than to deliver.  If the jury knew that Ford previously purchased and then used a controlled substance, the jury may have believed that Ford purchased a controlled substance with the intent to use in this case.  Matters of trial strategy that prove unsuccessful do not constitute deficient performance.  *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).  In this case, defense counsel's strategy backfired because the prosecutor asked additional questions about the nature of Ford's prior conviction that painted it in a more damaging light.  The failure of this strategy did not render counsel's performance ineffective.

Ford contends that defense counsel should have objected when the prosecutor asked further questions about his prior conviction. However, defense counsel had no ground to object as he opened the door by eliciting testimony that Ford's prior conviction was based only on the possession for use of a controlled substance. The prosecutor was entitled to clarify that Ford had been convicted of possession with intent to deliver. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

The prosecutor returned to this issue in closing in one brief comment: "he admitted today that he's been convicted of selling drugs, cocaine, in the past." Even if this comment was improper, it was very short. Had defense counsel objected, he would have drawn undue attention to it. Accordingly, we cannot deem counsel ineffective in failing to object.

## IV. NECESSARILY INCLUDED LESSER OFFENSE JURY INSTRUCTION

Ford contends that the trial court should have instructed the jury on a lesser included offense of possession with intent to deliver—simple possession. Although the record is not as clear as it should have been, it appears that defense counsel requested an instruction on the lesser offense of simple possession. At the close of the defendant's proofs, the following colloquy occurred:

> [*Defense Counsel*]: Your Honor? One second, let me talk to [the prosecutor]. If I could get your humble opinion, your Honor?
>
> *The Court*: Okay.
>
> [*Defense Counsel*]: (Unintelligible).
>
> *The Court*: We are on the record. This is not a - - it's not a lesser included, and so it'd be an [sic] cognate offense of possession or delivery. Obviously you do not have the element of use to prove delivery or possession. If [the prosecutor] [is] not adding it then you can't ask for it.
>
> [*Defense Counsel*]: (Unintelligible).
>
> *The Court*: You can ask for it. And because [the prosecutor] does not agree, I don't, quite frankly, believe that the facts support it. And it not being a lesser included, it would need the acquiescence of [the prosecutor], and so the motion is denied.

"[A]bsent a difference in the amount of the substance involved, the elements of simple possession are completely subsumed within the elements of the greater offense of possession with intent to deliver a controlled substance." *People v Robar*, 321 Mich App 106, 131; 910 NW2d 328 (2017). As a matter of law, simple possession is a necessarily included lesser offense of possession with intent to deliver a controlled substance. The trial court clearly erred in ruling otherwise.

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). A rational view of the evidence supported giving a simple possession instruction in this case. The evidence revealed that Ford possessed 0.633 grams of fentanyl. Detective Gauthier testified that this amount is more than an average user would keep on hand. However, the amount was rather small for a drug dealer. Accordingly, the court abused its discretion in refusing to give this instruction. See *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013).

"However, not all instructional error warrants reversal." *Id*. at 286. "Reversal is warranted only if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id*. (quotation marks and citation omitted). An error is outcome determinative "if it undermine[s] the reliability of the verdict." *People v Hawthorne*, 474 Mich 174, 181-182; 713 NW2d 724 (2006) (quotation marks and citations omitted). "The verdict is undermined when the evidence clearly supports the requested lesser included instruction that was not given to the jury." *Mitchell*, 301 Mich App at 286. The defendant bears "the burden of establishing that the error undermined the reliability of the verdict." *Hawthorne*, 474 Mich at 184.

Ford again relies on the lack of evidence of any specific delivery of substances to support his claim that the instructional error undermined the reliability of the verdict. But the jury was not required to find an actual delivery, only possession with intent to deliver. Ford specifically testified that he did not use fentanyl, yet fentanyl was found in the cabinet. Ford does not attempt to explain why he would possess fentanyl in the cabinet if he did not intend to use it. (He did provide an explanation for the fentanyl in the safe, the jury just did not believe it.) The handgun and the digital scale found near the fentanyl further weakens Ford's position. Given the lack of evidence supporting simple possession, we cannot conclude that Ford was actually prejudiced by the instructional error.

## V. THE TWO-THIRDS RULE

Following trial, the court sentenced Ford to three mandatory two-year terms of imprisonment for his felony-firearm convictions to be served consecutively to concurrent prison terms for his remaining convictions. The court sentenced Ford as a fourth habitual offender to 45 months to five years imprisonment for felon-in-possession, two to four years' imprisonment for maintaining a drug house, second offense, and 76 months to 20 years' imprisonment for possession with intent to deliver, second offense. Ford now contends that his felon-in-possession sentence violates the two-thirds rule.

MCL 769.34(2)(b) prohibits a court from imposing a minimum sentence "that exceeds 2/3 of the statutory maximum sentence." However, this rule does not apply when the statutory maximum punishment is life or any term of years. *People v Floyd*, 490 Mich 901, 902; 804 NW2d 564 (2011). The court sentenced Ford as a fourth habitual offender for his felon-in-possession conviction. This gave the court authority to sentence Ford "to imprisonment for life or for a lesser term" of years. MCL 769.12(1)(b). As such, the two-thirds rule did not apply in this case and the court did not err in imposing sentence.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick